(No. 13054.—Judgment affirmed.)

EMMA M. HART, Appellee, *vs.* ANNIE M. HART *et al.* Appellants.

*Opinion filed December 17, 1919.*

1. WILLS—*what is not proof of undue influence.* The fact that a daughter, who was chief beneficiary in her mother's will, went with her mother to an attorney's office to prepare the will and was present when it was prepared and executed does not, alone, prove the exercise of undue influence, where it does not appear that the daughter said anything improper at the time and the evidence shows she was a favorite and trusted daughter and had accompanied her mother for personal aid.

2. SAME—*attestation clause may prevail over testimony of attesting witnesses.* An attestation clause to a will which recites all the particulars of a good execution, as required by the statute, is *prima facie* evidence of due execution of the will, and may, under some circumstances, prevail over testimony of the attesting witnesses tending to show that some of the requisites are wanting.

3. SAME—*when testatrix has testamentary capacity.* A testatrix has sufficient capacity to execute a will if she has sufficient mind to enable her to understand the particular business in hand, remembers the natural objects of her bounty and can recall to mind her property and make disposition of it understandingly, according to some purpose in her mind.

4. SAME—*when opinion of non-expert witness that testatrix was of unsound mind is entitled to little weight.* The opinion of a non-expert witness that the testatrix was of unsound mind and memory when she executed her will is entitled to little or no weight where he states no facts or circumstances which induce a reasonable belief of unsoundness of mind.

5. SAME—*burden is on contestants to prove fraud or undue influence.* While the proponent has the burden of proving the due execution of a will and that the testatrix was of sound mind, the burden is upon the contestants to prove the issue of fraud or undue influence.

APPEAL from the Circuit Court of Winnebago county; the Hon. R. K. WELSH, Judge, presiding.

ROY F. HALL, for appellants.

FISHER, NORTH, WELSH & LINSCOTT, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Emma M. Hart, who was named as executrix in the last will and testament of Anna M. Hart, deceased, filed her petition in the county court of Winnebago county for the probate of said will and also a codicil thereto. On a hearing in the county court the will was admitted to probate but probate of the codicil was denied. On appeal by the executrix to the circuit court of said county, that court at its July term, 1919, admitted the codicil to probate. This appeal is prosecuted by three of the contestants,—Annie M. Hart, Catherine E. Hart and Clara L. Hart, daughters of the testatrix.

The testatrix executed her will on October 4, 1916, and the codicil thereto on July 5, 1917. She died January 26, 1918. By the fourth clause of her will she devised her homestead in Rockford, subject to the life use and income thereof given to Patrick Hart, and all the unpaid balance of money coming to the testatrix from a sale of property in Rockford, to her daughters Annie M. Hart, Catherine E. Hart and Clara L. Hart, each to receive an undivided one-fifth thereof, and the remaining two-fifths of said property she devised and bequeathed to another daughter, Emma M. Hart, absolutely and forever, with the following provisions: "But the said Emma M. Hart is to use and consume one of the said two-fifths for the purposes which I have

directed her to use the same for, and I might add that I have full confidence in my said daughter Emma M. Hart that she will use said one-fifth for the purpose directed." The special purpose for which Emma M. Hart was to use one-half of the property devised and bequeathed to her is not disclosed by the will. The codicil refers to the will and then recites and provides as follows:

"It is my will and desire that the fourth provision of my said will, whereby I have given and bequeathed the life use of my property to my husband, Patrick Hart, and the remainder of my property described in said fourth provision of my said will so that my daughter Emma M. Hart would take and receive two-fifths and each of my other daughters, Annie M. Hart, Catherine E. Hart and Clara L. Hart, would take one-fifth of the property described in said fourth provision of my said will, shall be struck out of my said will and canceled as a part of my said will, and that in lieu and in place of the said fourth provision of my said will hereby struck out and canceled, the following shall be inserted and placed in my said will in lieu and in place of the said fourth provision of my said will, otherwise my said will to stand and remain as it now is, except as hereinafter stated, viz.:

"*Fourth*—I give, devise and bequeath the homestead where I now reside, north of Mulberry street and between North Winnebago street and Rockton avenue, in the city of Rockford, county of Winnebago and State of Illinois, together with all the rest, residue and remainder of my property, to my husband, Patrick Hart, for life, and, subject to the life use and income of my said home, I give, devise and bequeath nine-fifteenths of my said home, and all the rest, residue and remainder of my property, to my daughter Emma M. Hart, absolutely and forever, and the remaining six-fifteenths of my said home, and all the rest, residue and remainder of my property, I give, devise and bequeath to my three daughters, Annie M. Hart, Catherine

E. Hart and Clara L. Hart, equally, and share and share alike and absolutely and forever; and I might add that I have given no portion of my estate to any of my sons because I believe they have been well provided for by their father and because I believe my daughters have earned all I am giving them by my said will in caring for myself and their father."

To the codicil there was attached an attestation clause, reciting that it was on the date thereof signed, sealed, published and declared by the testatrix as and for a codicil to her last will and testament, dated October 4, 1916, and witnessed "by each of us in the presence of each of us, and we in her presence and in the presence of each other and at her request have signed our names hereto as attesting witnesses thereof, and at the same time we believe the testatrix to be of sound and disposing mind and memory and acting freely and voluntarily in executing the foregoing codicil to her said will." This clause is signed by Helen A. Brown, Edwin P. Barrett and I. J. Monahan, all residents of Rockford, as attesting witnesses.

On February 27, 1918, there was filed an affidavit in the county clerk's office, in the usual form, by two of the attesting witnesses, Helen A. Brown and Edwin P. Barrett. The affidavit states positively that they were present on July 5, 1917, and saw Anna M. Hart sign the codicil to said last will and testament in their presence; that Anna M. Hart then and there acknowledged the same to be her act and deed; that they then and there subscribed their names thereto as attesting witnesses in the presence of the testatrix and at her request, and that they verily believe that the testatrix, at the time of signing the codicil to said last will and testament, was of full age, of sound mind and memory and under no constraint or improper influence.

By a stipulation of the parties this cause was heard by the circuit court on the same evidence of the subscribing witnesses, Helen A. Brown, Edwin P. Barrett and

I. J. Monahan, taken before the county court on the hearing before that court, and the transcript of the evidence was prepared and read in the circuit court on behalf of the proponent. It was further stipulated that the files in the county court in the matter of the estate of Anna M. Hart might be used as evidence. The only evidence heard in the circuit court was the testimony of the three witnesses, the will and the codicil and the attestation clauses to them, and the affidavit of two of the attesting witnesses, Helen A. Brown and Edwin P. Barrett, filed in the county court. The attestation clause to the will was the same, in substance, as the one to the codicil, and was signed by the same attesting witnesses as those that signed the codicil.

The contention of appellants is that the evidence offered is not sufficient to satisfy the statutory requirement that the testatrix shall be shown to have been of sound and disposing mind and memory, and that the proof shows such fraud, compulsion or other improper conduct as is sufficient to destroy or invalidate the will.

To entitle a will to probate under section 2 of our statute on wills it is only necessary that two of the credible witnesses attesting it shall declare on oath or affirmation that they were present and saw the testator or testatrix sign the will, testament or codicil in their presence or acknowledged the same to be his or her act and deed, and that they believed the testator or testatrix to be of sound mind and memory at the time of signing or acknowledging the same, provided that no proof of fraud, compulsion or other improper conduct be exhibited which in the opinion of the court shall be deemed sufficient to invalidate or destroy the same. The testimony of two of the subscribing witnesses, Helen A. Brown and Edwin P. Barrett, in addition to their affidavit filed with the county clerk, is positive that Anna M. Hart was of sound and disposing mind and memory at the time she executed the codicil and that it was an act of her own free will. They also testified that Emma M. Hart,

daughter of the testatrix, was present when the will was executed, and also I. J. Monahan, the other attesting witness and the one who prepared the will for Mrs. Hart. Both of these witnesses were acquainted with the testatrix before she came to have the will executed. Miss Brown was the stenographer for Monahan and wrote the codicil on a typewriter at his dictation. She had had a speaking acquaintance with the testatrix for some time. On her cross-examination it developed that she had no conversation with the testatrix at the time she signed her will, or at any other time, upon which to base her opinion that she was of sound mind and memory. She was then asked this question, "Not having any talk with her at any time, you do not know whether she was of sound and disposing mind and memory?" and replied, "No, sir." Barrett had known the testatrix for fifteen or twenty years, and while he stated that he had had no conversation with her at the time she executed her will and had never transacted any business dealings with her or had any particular conversation with her, yet he was positive that she was of sound mind and memory and that he had no reason to believe otherwise.

Monahan, the third attesting witness, dictated both the will and the codicil to Miss Brown, his stenographer. He testified that Mrs. Hart was accompanied by her daughter on both occasions when she made her will and the codicil, and that he was consulted by the testatrix on both occasions in his private office and that no one else was there present except the daughter, but that his stenographer, Miss Brown, was only ten or twelve feet away, in the adjoining room. He thought the door to his private office was open when he was consulted about the codicil. He states in his testimony that he got the data for writing the will from Mrs. Hart in his private office, and that he got the data for writing the codicil from Mrs. Hart and her daughter in his private office. He further states that he advised her on both occasions that her daughter ought not to be present;

290—31

that when she made the codicil he recommended the making of it so that the will might stand if the codicil was defeated; that he advised her thoroughly and discussed the details of the codicil with the testatrix and read it over to her after it was written; that he did not recall whether she made any objection to it or not; that she knew enough to sign it and knew that Miss Brown and Barrett and himself were signing it for her as witnesses, and that she knew that she was making a codicil to her will. He also stated that he dictated the attestation clause and signed both instruments as an attesting witness and that he suggested to her the witnesses to both instruments, yet he testified that he questioned whether she was of sound and disposing mind and memory at the times of making the will and codicil but stated that he could not say positively. He also stated that he thought Mrs. Hart was under the influence of an opiate; that there was not anything unusual about her actions, but she seemed to be under the influence of an opiate and suffering great pain from a cancer with which she was afflicted. He makes a positive statement that he would not swear that she was of sound mind and disposing memory at the time of making her will; also that he thinks she was not of sound and disposing mind and memory and free from any undue influence or restraint when she signed the codicil. He did state in the last sentence of his testimony that at the time the will was executed he thought Mrs. Hart was competent and that she was free from undue restraint and influence.

In all the testimony it does not appear that the daughter Emma M. Hart said anything whatever that was improper at any time she and her mother were consulting the attorney or at the execution of the will. She made no suggestions to her mother as to what should go in the will, so far as the evidence shows, and, so far as we can learn from the evidence, all that she did was to assist her mother in helping her to understand Monahan by putting the sub-

stance of his words to her in a different way so she could understand them. We do not think that there is any proof of such fraud, compulsion or other improper conduct on the part of this daughter as would be deemed sufficient to defeat the probate of the will on that ground. The only improper conduct shown on her part is her bare presence when her mother was consulting with the attorney. The will itself discloses, as does all the evidence, that she was a favorite and trusted daughter, and that she accompanied her mother to Monahan's office for that reason and for personal aid. It does not appear that Monahan ever suggested to this daughter that she should not be present or that she should retire from the consultation or from the execution of the will.

We think the codicil was properly admitted to probate. The attestation clauses to the will and the codicil, which Monahan dictated and signed as an attesting witness voluntarily and at his own suggestion, positively contradict his evidence on the trial. He evidently did not think at those times that the testatrix was mentally unsound or under any constraint on the part of the daughter or anyone else. If he did, it was his duty as an attorney not only to refuse to attest the will in the manner he did but to also decline to draw the will. The only explanation we can see in his testimony for his change of mind is that he got his information that the testatrix was under the influence of an opiate after the will and codicil were executed from other parties, and probably from the other brothers and sisters who were consulting him about the execution of the will and this litigation. It does not appear clearly when he got this information, but it does appear that he was consulted with a view to employing him in the case, and that he very properly declined such employment on the ground that he was a witness.

The law is that where the attestation clause to a will recites all the particulars of a good execution as required

by the statute, such clause will be *prima facie* evidence of the due execution of the will. Such proof will often prevail over the testimony of the attesting witnesses which tends to show that some of the requisites are wanting. (*Thompson* v. *Owen,* 174 Ill. 229; *Thompson* v. *Karme,* 268 id. 168; *Gould* v. *Chicago Theological Seminary,* 189 id. 282; *In re Will of Barry,* 219 id. 391; *Hutchison* v. *Kelly,* 276 id. 438.) A testatrix has sufficient capacity to execute a will if she has sufficient mind and memory to enable her to understand the particular business in hand, remembers who are the natural objects of her bounty, and can recall to mind her property and make disposition of it understandingly according to some purpose or plan formed in her mind. (*Craig* v. *Southard,* 148 Ill. 37; *Campbell* v. *Campbell,* 130 id. 466.) The testimony in this case, including the will, shows that Mrs. Hart had such testamentary capacity. Monahan based his testimony that she was mentally incompetent apparently upon his conclusion that the testatrix was under the influence of an opiate, which conclusion was based on hearsay evidence and upon the further fact that she was suffering pain. The opinion of a non-expert witness that the testatrix is of unsound mind and memory is entitled to little or no weight where he states no facts or circumstances which could induce a reasonable belief of unsoundness of mind. (*Brainard* v. *Brainard,* 259 Ill. 613; *Teter* v. *Spooner,* 279 id. 39.) While the proponent has the burden of proving the due execution of a will and that the testatrix was of sound mind, upon the issue of fraud or undue influence the burden is cast upon the contestants. *Webster* v. *Yorty,* 194 Ill. 408.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*