(No. 36814.—

In re Estate of Velie.—(Moline National Bank of Moline, Illinois, Appellee, *vs.* Anne Martha Fleury Velie Valdes *et al.,* Appellants and Appellees.)

*Opinion filed May 25, 1962.—Rehearing denied July 12, 1962.*

Joseph R. Rosborough, and Bozeman, Neighbour & Patton, both of Moline, (Virgil Bozeman, of counsel,) for appellants.

Graham, Califf, Harper & Benson, of Moline, (Robert G. Graham, of counsel,) for petitioner-appellee

Moline National Bank of Moline; and KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, of Chicago, (PERRY S. PATTERSON and JOHN P. MANWELL, of counsel,) for defendants-appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal from an order of the probate court of Rock Island County which admitted to probate certain instruments presented by Moline National Bank, as executor of the estate of Annie F. Velie, deceased. The instruments involved on this appeal are a will dated December 17, 1935, a codicil dated "March ——, 1936," and another codicil dated August 31, 1936. A fourth instrument dated June 25, 1937, which disposed of certain items of jewelry, was also offered and admitted to probate as a codicil, but no appeal has been taken with respect to this instrument.

Annie F. Velie, the decedent, named five principal beneficiaries in her will: her daughter, Marjory Heard, who predeceased her; Marjory's two children, Ann Flythe and William Heard, Jr.; and her deceased son's two children, Damaris Jenks and Anne Valdes. The will disposed of her real and personal property in a manner which favored her daughter and her daughter's children, proponents in this case, although her son's children, the contestants, were to receive an interest in certain real estate. By the codicil of March ——, 1936, the previous devise to the contestants was revoked and the real estate became part of the proponents' share of the estate. This scheme of distribution was not changed by the codicil of August 31, 1936, which only designated as a co-executor an individual who was deceased when these instruments were offered for probate.

The will and the two codicils here in question were witnessed by Dr. F. J. Otis, the decedent's physician, Helene H. Hull, his secretary, and Catherine Landahl, whom he employed as a nurse. Both the will and the codicil of March

———, 1936, contained attestation clauses which stated that the instrument was signed by the testatrix and the witnesses in each other's presence, and that the witnesses believed the testatrix to be of sound and disposing mind and memory. Neither Dr. Otis nor Helene Hull was alive at the time of the probate proceedings, but his signature was proved by his son and by Catherine Landahl, and hers was proved by Catherine Landahl.

The appellants' case rests primarily upon the testimony of Catherine Landahl, the only survivor of the three attesting witnesses. When she was called as a witness on April 21, 1961, she first testified that she had an opinion as to whether or not the testatrix was of sound mind and memory at the time she signed the instrument and then that she had no opinion. She then stated: "As far as I was concerned, she was all right." In response to questions by the trial judge she testified that as far as she knew the testatrix was of sound mind and memory in March of 1936, when she drew the codicil, and that she had read the portion of the attesting clause which stated: "We believe her to be of sound and disposing mind and memory," and that that was her opinion at that time.

Subsequently, contestants' counsel showed her a transcript of her testimony, and on July 11, 1961, she again took the stand, "to clarify some points she has already testified to." In reply to a question by contestants' counsel she stated that she had no opinion about the decedent's soundness of mind and memory when she witnessed the will. She was asked whether she had any knowledge of the use of narcotics by the testatrix at or about the time of the execution of the will and the codicils, and she answered "Yes." On this occasion she testified that she had not read the attestation clause, and that she did not know that she was witnessing a will.

On the basis of this testimony contestants argue that the proponents have not proved that the witness "believed

the testator to be of sound mind and memory at the time of signing or acknowledging the will," as the statute requires. (Ill. Rev. Stat. 1959, chap. 3, par. 69.) To buttress Catherine Landahl's equivocal and contradictory testimony, the contestants emphasize certain aspects of the testimony of the witnesses who attested the signing of the uncontested instrument dated June 25, 1937, which was admitted to probate, but which is not involved on this appeal.

The witnesses to this instrument were the decedent's maid and her chauffeur. Both of them testified that she was of sound mind and memory. The maid testified that one of her duties was to clean a hypodermic syringe almost every day. She never saw the decedent use these syringes and the only testimony about the contents of the syringes was her recollection that a doctor had told her they contained dilaudid, a substance that was not further identified. The chauffeur testified that the decedent became mentally incompetent in 1938. He also testified that he saw syringes in the decedent's bedroom. The contestants also call attention to the fact that the fourth instrument misnames the decedent's grandson, William A. Heard, Jr., as Willard Velie Heard. This instrument, however, was written in longhand by the maid from the decedent's dictation. Even if the misnomer could be thought to have a bearing on her testamentary capacity at that time, it does not relate back to the time when the instruments here in issue were executed.

The proponents would avoid consideration of Catherine Landahl's testimony on the ground that only two attesting witnesses are necessary, and since the signatures of Dr. Otis and Helene Hull were proved, the statutory requirement has been satisfied. But we need not decide whether proof of the signatures of two deceased attesting witnesses is sufficient to admit a will to probate although a third attesting witness is available, because in this case the surviving witness was called by the proponents and her testimony is in the record.

Although Catherine Landahl's testimony is thus before us and must be considered, we are of the opinion that it did not justify the trial court in refusing to admit the will and its codicils to probate. It is axiomatic that the testimony of attesting witnesses who seek to impeach the validity of a will is to be subjected to careful scrutiny. (See, *e.g., Conway* v. *Conway,* 14 Ill.2d 461; *Hart* v. *Hart,* 290 Ill. 476.) Here the testimony of the witness was contradicted by the attestation clause which she had signed, and it was so internally inconsistent as not to carry conviction.

The appellants also contend that even if the will and the two codicils were properly admitted to probate, the effect of the codicil of August 31, 1936, was to republish the will as originally drawn and to revoke the intervening codicil of March ——, 1936. Their point apparently is when the second codicil republished the will, it also republished the revocation clause of the will, with the result that the intervening codicil of March ——, 1936, was revoked. The revocatory effect of a codicil on intervening codicils does not appear to have been passed upon by this court. But *Austin* v. *First Trust and Savings Bank,* 343 Ill. 406, supports the proposition that previous codicils are republished except insofar as they are inconsistent with a subsequent codicil, and that rule is consistent with the general policy that gives effect to testamentary provisions except where a will is specifically revoked or subsequent provisions are inconsistent with previous dispositions. (*In re Estate of Reeve,* 393 Ill. 272; *Clark* v. *Todd,* 310 Ill. 361.) In other jurisdictions (see cases collected 59 A.L.R. 2d 11, 149,) the rule is all but universal that in the absence of an explicit revocation a codicil revokes previous codicils only insofar as it is inconsistent with them, and we see no reason to adopt a different view.

Finally, the contestants suggest that there is no proof as to when the codicil of March ——, 1936, was executed because the blank left for the specific date was not filled in.

Although the Probate Act does not require that a will or codicil be dated in order to be admitted to probate, the contestants argue that this undated codicil may have been executed at any time after the will of December 17, 1935, even after the decedent admittedly became incompetent in 1938. In her testimony, however, Catherine Landahl referred to the drawing of the codicil and its attestation in March of 1936.

It has been suggested by the proponents that the instrument dated June 25, 1937, which was admitted to probate as a codicil to the decedent's will and which is not in issue in this court, was effective to republish the decedent's will and the intervening codicils and that it is therefore unnecessary to go beyond the uncontroverted testimony of the witnesses who attested that instrument. In the view we have taken, however, it has not been necessary to consider this suggestion, and we have refrained from doing so because that instrument, although admitted to probate as a codicil, does not refer to the will or to the earlier codicils.

The order of the probate court of Rock Island County is affirmed.

*Order affirmed.*