FRANK GOULD

*v.*

THE CHICAGO THEOLOGICAL SEMINARY *et al.*

*Opinion filed February 20, 1901.*

1. WILLS—*different rule prevails in establishing will in probate and circuit courts.* In the probate court, proof of the due execution of a will is confined to the testimony of the subscribing witnesses, but in the circuit court the proponents may resort to any legitimate evidence to establish a will in chancery.

2. SAME—*what will raise the presumption that will was signed when attested.* If a will, including the attestation clause, which recites that the will had been signed, is in the testator's handwriting, is properly attested and bears the testator's genuine signature when offered for probate, it will be presumed that it was signed at the time of attestation, where the subscribing witnesses do not testify that the will was not signed but only that they did not see the sig⁻ nature, the paper being so folded that they could not see that part of it where the signature appears.

3. SAME—*what makes a prima facie case of due execution of will.* If there is proof that the testator's signature is genuine and that the two subscribing witnesses signed the attestation clause in his presence and at his request, a *prima facie* case in favor of the due execution of the will is made out, which is not overcome by the mere fact that the subscribing witnesses testify that they did not notice whether the will was signed or not.

4. SAME—*what facts are evidence that the will was properly executed.* The facts that a testator is shown to have been conversant with the formalities required in the execution of wills, and that he placed the instrument among his private papers, where it was found after his death, are evidence tending to show that a will, regularly signed and witnessed, was duly executed.

5. SAME—*subscribing witnesses need not know that instrument is a will.* It is not necessary that the subscribing witnesses see the testator's signature, that they know the instrument is a will or that the testator acknowledged his *signature* to them, but it is sufficient if the testator acknowledged the execution of the *will*, not necessarily in words, but by any sign, act or gesture which indicates an acknowledgment of the *will* with unmistakable certainty.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

PARTRIDGE & PARTRIDGE, (GWYNN GARNETT, of counsel,) for appellant.

DAVID FALES, MASON B. & F. S. LOOMIS, PAGE & BOOTH, and BENTLEY & BURLING, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

On November 23, 1899, Francis D. Little, the executor therein named, presented for probate to the probate court of Cook county an instrument in writing bearing date February 2, 1898, purporting to be the last will and testament of Leonard Gould, deceased. The court, upon hearing, held the instrument not to be duly proven and refused to admit the same to probate. An appeal was perfected by certain of the beneficiaries therein named to the circuit court of said county, where, upon a hearing, said instrument was held to be duly proven, admitted to probate and ordered recorded, and Frank Gould, brother of the testator, has prosecuted this appeal.

The testator died seized and possessed of real estate situated in the State of Illinois, which is disposed of by said will. A freehold, therefore, is involved, and the appeal was properly prosecuted to this court.

The instrument introduced in evidence was written upon the four pages of a sheet of legal cap, and, including the attestation clause, was in the handwriting of Leonard Gould. It was by him signed and sealed, and had attached thereto, immediately following the attestation clause, the genuine signatures of Peter R. Earling and O. A. Manchee, which attestation clause, as attested by said witnesses, is as follows:

"Signed, sealed and acknowledged by Leonard Gould in our presence, who at his request and in his presence have subscribed our names as witnesses, at Chicago, Illinois, this second day of February, A. D. 1898.   PETER R. EARLING, *Witness.*
                                      O. A. MANCHEE,        "

Earling testified that he wrote his name as a witness to the paper presented for probate; that Leonard Gould

came to his desk with the paper in his hand and said to him, "Will you please witness this?" or "Will you please witness this paper?" that Gould kept his finger on the paper and indicated where he wanted him to sign; that the paper was so folded that only a few words of writing were visible; that he did not read the words in sight; that he wrote his name, also the word "witness," on the right-hand side of the paper, below the writing; that he fully identified the paper; that he did not see Gould sign the paper or his signature thereon; that he assumed it had been signed by Gould before he witnessed it; that he handed it back to Gould, who said to him, "Well, who can I get for another witness?" that he replied, "There is Manchee; he can do it for you;" that Manchee was standing up at a desk to the rear of Earling's desk, and Gould started in that direction. Manchee testified that as he was standing at his desk the testator came up to him with a sheet of legal cap with some writing on it out at full length; that as he reached the desk he folded the paper and said, "Sign your name there, Manchee," or something of that sort; that the witness did so and the testator took the paper away with him; that he knew he was signing as a witness; that he placed two dots, meaning "ditto," below the word "witness," and that he did not see Leonard Gould sign the paper, or his signature thereon. Between the time of the execution of the will and his death Gould spoke to different parties of having made his will. After his death the will was found in his box in a safety deposit vault in the city of Chicago, among his valuable papers. He had executed a prior will, and knew it was necessary that a will be signed and witnessed.

The question presented here for determination is, does the evidence of the attesting witnesses, taken in connection with the other facts and circumstances proven on the hearing and the presumptions which arise therefrom, establish the execution of the instrument offered in evidence as the last will and testament of Leonard Gould?

On the hearing in the probate court the evidence was properly confined to the testimony of the two attesting witnesses, and unless their testimony was sufficient to establish the execution of the will, probate thereof was rightly refused. On the trial in the circuit court, probate of the will having been refused by the probate court, a different rule prevails, and the proponents of the will in that court were not confined to the testimony of the two attesting witnesses, but to support and establish the execution of the will might rightfully resort to any legitimate evidence to establish a will in chancery. 3 Starr & Cur. Stat. chap. 148, sec. 13; *Crowley* v. *Crowley*, 80 Ill. 469; *Thompson* v. *Owen*, 174 id. 229.

We shall first consider whether the will was signed at the time it was subscribed by the attesting witnesses. The witnesses both state that at the time they signed their names to said instrument they did not see written thereon the signature of the testator. There is, therefore, no direct proof that the signature of the testator was upon the instrument at the time it was subscribed by the attesting witnesses. The witnesses, however, do not say it was not signed by the testator at the time they signed as witnesses; they only say it was folded so they did not see that part of the paper upon which the signature of the testator now appears. It may, therefore, have been signed by the testator and they not have seen his signature. The will, including the attestation clause, is in the handwriting of Leonard Gould. Attached thereto is his genuine signature. He sought out Earling and Manchee and asked them to witness it, which they did. From these facts a presumption arises that it was signed by the testator when he caused it to be attested. It would be unreasonable to assume the testator asked the witnesses to attest the execution of an unsigned instrument. It is said in *Dewey* v. *Dewey*, 1 Metc. 349 (p. 354): "The signature of the testator is admitted to be a genuine signature, and the certificate of attestation assumes that

it had been already signed. The purpose of procuring the attestation of the witnesses was to give effect to the instrument as a valid will. It can hardly be supposed that the testator, who was by his own active agency procuring the authentication of the instrument by the requisite witnesses, would have omitted the first step necessary to its due execution, viz., the signature by himself."

Where there is proof that the signature to the will produced is the genuine signature of the testator and that the two subscribing witnesses signed the attestation clause in his presence, a *prima facie* case is made in favor of the due execution of the will, and this *prima facie* case is not overcome by the mere fact that the subscribing witnesses testify they failed to notice whether the will was signed or not. In *Hobart* v. *Hobart*, 154 Ill. 610, it is said (p. 619): "In addition to the presumption that the testator, Hobart, had signed the will, arising from his declaration that it was his will and from his request to the witnesses to sign it, there is proof that the signature to the will produced is his and that the two subscribing witnesses signed the attestation clause in his presence. Thus, a *prima facie* case is made in favor of the due execution of the will; and this *prima facie* case is not overcome by the mere fact that the subscribing witness here testifying failed to notice whether the will was signed or not and cannot remember whether she saw the signature or not." Furthermore, the attestation clause is in the handwriting of the testator and contains a recital that the will had been signed. All the authorities concur in holding that such attestation is *prima facie* evidence of the due execution of the will, and will often prevail over the testimony of witnesses who give evidence tending to show that some of the requisites were omitted. "It seems to be well settled that, in the absence of all proof, the witnesses being deceased or not in a condition to give testimony, the presumption *omnia rite acta* will arise, as in ordinary cases. * * * And where the attestation clause

contains all the particulars of a good execution it will always be *prima facie* evidence of due execution, and will often prevail over the testimony of witnesses who give evidence tending to show that some of the requisites were omitted." 1 Redfield on Wills,—4th ed.—238; *Thompson* v. *Owen, supra.*

In *Abbott* v. *Abbott,* 41 Mich. 540, it is said (p. 542): "We know of no rule of law which makes the probate of a will depend upon the recollection, or even the veracity, of a subscribing witness. The law, for wise and obvious reasons, requires such instruments to be executed and attested with such precautions as will usually guard against fraud. But if the forgetfulness or falsehood of a subscribing witness can invalidate a will, it would be easy, in many cases, to use such artifices or corruption as would render the best will nugatory. Their evidence is not conclusive either way, nor does the law presume that they are either more or less truthful than others. It presumes they had, when they signed, full knowledge of what they were doing, and in case they are dead their attestation, when proved, is *prima facie* evidence that all was done as it should be."

In *McCurdy* v. *Neall,* 42 N. J. Eq. 333, it was said: "The attestation clause is perfect, and the execution to which the witnesses thus certify and attest is an exact compliance with the statute. Under such circumstances the court must have clear proof to warrant the conclusion that the will was not duly executed. (*Wright* v. *Rogers,* L. R. 1 P. & D. 678.) In *Allaire* v. *Allaire,* 8 Vr. 312, it is laid down that 'if the attestation clause is perfect and shows on its face that all the forms required by the statute have been complied with, and the subscribing witnesses, when called, admit their signatures, but through defect of memory, or for any other reason, fail to testify to the due execution of the will, it may be established on the presumption arising from the form of the attesting clause, unless there be affirmative evidence given to dis-

prove its statements.' In *Tappen* v. *Davidson*, 12 C. E. Green, 459, it was held that if, in such case, it be merely doubtful, from the evidence, whether the statutory requisites have been complied with, the presumption arising from the attestation clause is not overcome. In this case the evidence is by no means such as to disprove the statements in the attestation clause."

In *Matter of Will of Kellum*, 52 N. Y. 517, it was said (p. 519): "If the attestation clause is full and the signatures genuine and the circumstances corroborative of due execution, and no evidence disproving a compliance in any particular, the presumption may be lawfully indulged that all the provisions of the statute were complied with, although the witnesses are unable to recollect the execution or what took place at the time. In proportion to the absence of memory should care and vigilance be exercised in examining the facts to prevent fraud and imposition; but if the circumstances of good faith and intelligence of the witnesses satisfy the judgment that the statute has been complied with, there is no rule of law to prevent admitting the will to probate."

In *Jauncey* v. *Thorne*, 2 Barb. Ch. 40, Chancellor Walworth said (p. 59): "It is a very different question, however, whether, to sustain and establish the validity of a will, the courts should hold it to be necessary for the subscribing witnesses to recollect and testify to the fact that all the formalities prescribed in the statute were actually complied with, for if this were required, very few devises of property would be supported unless the testimony of the witnesses was taken and perpetuated soon after wills attested by them were made. This, in many cases, would be wholly impracticable, as the testator frequently lives many years after he has executed his will. And where there is good reason to suppose the will has been duly executed and that no fraud or want of testamentary capacity existed at the time it was made, justice to the dead as well as to the living requires that

the declared wishes of the testator should not be defeated by the imperfect recollections of the attesting witnesses, or by reason of their deaths or removal beyond the jurisdiction of the State.    It is for this reason that the most liberal presumptions in favor of the due execution of wills are sanctioned by courts of justice, where, from lapse of time or otherwise, it may be impossible to give positive evidence on the subject."

In the case of *Peck* v. *Cary*, 27 N. Y. 9, Chief Justice Denio said (p. 32): "A different rule, and one which should require the witnesses always to remember and be able to state affirmatively the several matters required to be done, would render wills the most uncertain of all legal instruments."

In *Will of O'Hagan*, 73 Wis. 78, where both of the attesting witnesses testified that they had no recollection whatever of signing the instrument and could testify only to the genuineness of their signatures, the Supreme Court said (p. 83): "The presumption arising from the attestation and the attesting clause, to the effect that it was subscribed by the witnesses in the presence of the testator, is not overcome by proof, hence the instrument was properly probated as the last will and testament of Peter O'Hagan."

In *Orser* v. *Orser*, 24 N. Y. 51, Judge Selden says (p. 52): "A will duly attested upon its face, the signatures to which are all genuine, may be admitted to probate although none of the subscribing witnesses are able to swear, from recollection, that the formalities required by the statute were complied with, and even although some of them should swear positively that they were not, if the other evidence warrants the inference that they were."

In *Matter of Will of Cottrell*, 95 N. Y. 329, it is said (p. 334): "The precise force which should be accorded to a full attestation clause regularly authenticated is not very clearly defined in the cases, but they all agree in the conclusion that it is entitled to great weight in the

189 - 19

determination of the question of fact involved. (*Blake* v. *Knight*, 3 Curt. 547; *Orser* v. *Orser*, 24 N. Y. 55.) A regular attestation clause shown to have been signed by the witnesses, and corroborated either by the circumstances surrounding the execution of the instrument, the testimony of other witnesses to the fact of due execution, or other competent evidence, has been held in many other cases, as well as those already cited, to be sufficient to establish a will signed by the testator, even against the positive evidence of the attesting witnesses to the contrary."

Another paper found in said safety deposit box, bearing date the 28th day of April, 1879, which was proven to have been signed, sealed and duly witnessed by the testator, but with the space for signatures cut out, was offered in evidence. Mr. N. A. Partridge, the attorney who prepared said paper, testified that when he prepared the same Gould asked him if it was necessary that the attesting witnesses should know that the paper was a will; that he said it was not, provided he acknowledged it as an instrument executed by him; that said paper was executed at the store of L. Gould & Co., in his presence; that Gould and he stepped to the desk of one of the witnesses; that the other witness was called over to that desk; that he folded the paper and put it down on the desk before them in such way that Gould's signature could be seen but not the body of the instrument; that he asked Gould if he acknowledged this paper as an instrument executed by himself; that he said he did; that Gould asked the witnesses to sign as such, which they did in the presence of Gould and of each other. This testimony showed Gould was fully informed as to the requirements of the statute with reference to the execution of wills at the time the will in question was attested. It has been held the fact that the testator was familiar with the formalities required in the execution of wills is evidence tending to show that a will regularly signed and witnessed was duly executed. *Gove* v. *Gawen*, 3 Curt. 151;

*Chambers* v. *Queen's Proctor*, 2 id. 415; *Gabel* v. *Rauch*, (S. C.) 27 S. E. Rep. 555; *Webb* v. *Dye*, 18 W. Va. 376; *In re Menge's Will*, 35 N.Y. Sup. 493; *Gwillim* v. *Gwillim*, 3 S. & T. 200.

The fact that the testator placed the instrument among his private papers is evidence that it was properly executed. In *In re Kellum, supra,* a will was admitted to probate. The court lay stress upon the fact that the draughtsman was a lawyer skilled in the preparation and execution of wills. It was also deemed important "that the testator kept it until his death among his valuable private papers." In *In re Sullivan's Will,* 114 Mich. 189, both the attesting witnesses were dead, and the will was signed by the testatrix by simply making her mark. It was claimed that there was no proof of a proper execution. The court held that to prove the due execution of the will it was competent to consider that the testatrix deposited the will in the probate court and at various times prior to her death spoke of the instrument, recognizing it as her will, and that the will and attestation clause were drawn by a lawyer of good repute. In *Thompson* v. *Owen, supra,* the genuine signature of the testator was attached to the will. The attestation clause recited full compliance with all the requirements of the statute with relation to the execution of wills. The testator had been instructed by the attorney who prepared the will, as to the requirements of the statute with relation to the execution of wills. After the death of the testator the will was produced by the custodian thereof with whom it had been deposited by the testator for safe keeping, and the attesting witnesses, each for himself, testified that the signature appended to the attestation clause, purporting to be his signature, was his true and genuine signature. The will was admitted to probate, although each of the attesting witnesses testified he had no recollection of signing the said attestation clause or of seeing the deceased sign the will, or that the deceased ever acknowledged the same to be his act or deed.

From all these facts and circumstances, and the presumptions legitimately arising therefrom, the mind is irresistibly forced to the conclusion, as an established fact, that this instrument was signed by Gould at the time the attesting witnesses subscribed their names thereto as witnesses to the execution thereof.

Having reached the conclusion that the will was signed by the testator at the time it was subscribed by the attesting witnesses, we will next consider whether the evidence shows it to have been duly acknowledged.

It is not necessary that the attesting witnesses see the signature of the testator upon the face of the will, that they know the instrument they are witnessing to be a will, or that an acknowledgment of the signature be made to them by the testator. The statutory requirement is satisfied if the testator acknowledge the execution of the *will.* And such acknowledgment need not be in language. Any act, sign or gesture of the testator will suffice which indicates an acknowledgment of the *will* with unmistakable certainty. *Allison* v. *Allison,* 46 Ill. 60; *Hobart* v. *Hobart, supra; Gibson* v. *Nelson,* 181 Ill. 122; Schouler on Wills, sec. 321; *Wright* v. *Wright,* 7 Bing. 457; *White* v. *Trustees of British Museum,* 6 id. 310; *Ellis* v. *Smith,* 1 Ves. Jr. 11; *Stonehouse* v. *Evelyn,* 3 P. Wms. 253; *Grayson* v. *Atkinson,* 2 Ves. Sr. 454; *Dewey* v. *Dewey, supra; Tilden* v. *Tilden,* 13 Gray, 110; *Ela* v. *Edwards,* 16 id. 91; *Hogan* v. *Grosvenor,* 10 Metc. 54; *Osborn* v. *Cook,* 11 Cush. 532; *Hall* v. *Hall,* 17 Pick. 373; *Nickerson* v. *Buck,* 12 Cush. 332.

A difference of statute expression, and, hence, of statute construction, is found upon the subject of signing or acknowledging wills in England and the different States of the Union, and this fact accounts largely for the apparent conflict in the cases relied upon and cited by the respective parties in their briefs.

The statute of 29 Car. II, chap. 3, sec. 5, is as follows: "All devises   *   *   *   shall be in writing and signed by the party so devising the same, or by some other person

in his presence and by his express directions, and shall be attested and subscribed in the presence of the said devisor by three or four credible witnesses." Mr. Schouler, in his work on Wills, (sec. 321,) in discussing the interpretation of the statute, says: "The testator was not obliged to sign in the presence of the witnesses, provided he made due acknowledgment of the instrument; and, furthermore, that a due acknowledgment in fact did not necessitate his acknowledging in words that the instrument was his *will*, nor apprising the witnesses in any way of the nature or contents of the instrument they were called upon to attest. A testator's declaration before three witnesses that the instrument produced and already signed by him was his will was equivalent to signing it before them. And more than this, though he merely asked the witnesses to sign, as such, the paper he produced which bore his signature, and they did so, neither seeing his signature nor knowing what was the nature of the instrument thus attested, the statute, nevertheless, was satisfied, supposing, of course, that this whole transaction imported consistently the full testamentary intent on his part."

Tindal, C. J., in *White* v. *Trustees of British Museum, supra,* which arose under 29 Car. II, chap. 3, sec. 5, says: "When * * * we find the testator knew this instrument to be his will, that he produced it to three persons and asked them to sign it as witnesses, that they subscribed their names in his presence and returned the same identical instrument to him, we think the testator did acknowledge, in fact though not in words, to the three witnesses, that the will was his." To the same effect are *Wright* v. *Wright, supra; Ellis* v. *Smith, supra; Stonehouse* v. *Evelyn, supra; Grayson* v. *Atkinson, supra.*

The legislature of Massachusetts has re-enacted the statute of 29 Car. II, chap. 3, sec. 5, and the Supreme Court of that State, in construing the same, have fol-

lowed the construction given thereto by the courts of England, and have uniformly held that the acknowledgment required is of the *will* and not of the *signature*. In *Ela* v. *Edwards, supra,* there were three witnesses. The second was out of the State. One witness testified as follows: "She passed me a package of papers. She asked me to sign my name as a witness; told me where to sign—on the left side." The other witness testified: "She said she wanted me to witness a document; that she had been making a little disposal of her effects, and would like to have me sign it as a witness. She put her finger to the line where she wished me to sign." This will was drawn up by the testatrix in her own handwriting, but it had no attestation clause. The court reversed the decree of the lower court, opposed to the will, saying: "What are the circumstances in the present case? The first and leading one is, that we find a paper drawn up by the testatrix, written wholly by her own hand, purporting to be a will, and her name attached thereto, with great particularity as to her place of residence and the time at which she executed the same, and bore thereupon, in the proper place for attesting witnesses, the names of three persons duly written thereon. Two of these three persons are found living within this commonwealth, and they both testify that the testatrix sought them as witnesses; that she took the paper from her own custody, asked each of these witnesses to sign as a witness, and pointed them to the proper place on the left-hand side to put their names, and had them sign their names in her presence, and she then took the paper again into her own possession. In both of these cases all was done in relation to procuring the signatures of these two witnesses by the testatrix herself. She knew the character of the instrument, because she wrote it. * * * In the opinion of the court, the facts in the case and the surrounding circumstances authorize the inference that this instrument was duly attested."

Section 2 of our statute in regard to wills (Rev. Stat. p. 1101,) provides that "all *wills* * * * shall be reduced to writing, and signed by the testator or testatrix, or by some person in his or her presence, and by his or her direction, and attested in the presence of the testator or testatrix, by two or more credible witnesses, two of whom, declaring on oath or affirmation, before the county court of the proper county, that they were present and saw the testator or testatrix sign said will, testament or codicil, in their presence, or acknowledged the same to be his or her act and deed, and that they believed the testator or testatrix to be of sound mind and memory at the time of signing or acknowledging the same, shall be sufficient proof of the execution of said will * * * to admit the same to record."   The only difference between this statute and the Statute of Frauds is the addition of the words "or acknowledged the same to be his or her act and deed," which phrase, by construction, had long since by the courts of England and Massachusetts been read into the statute of 29 Car. II, chap. 3, sec. 5.

The English and Massachusetts cases above cited, in principle have been followed by this court.   "It will be noticed that the statute does not in terms require the subscribing witnesses to attest or certify that the will was signed by the testator *before* they subscribed their own names, and in *Hobart* v. *Hobart*, 154 Ill. 610, we held that where the testator acknowledged the *will* to be his act and deed, that was sufficient, without acknowledging specifically and in terms that he had signed it; that as it would not be a will without his signature, it would, in the absence of proof, be presumed from his statement that it was his will and that he had signed it.   In that case it was pointed out that decisions based upon the English statute, (1 Vict. chap. 26,) and the statutes of New York and other States requiring specifically that the *signature* be made or acknowledged in the presence of the witnesses, were not applicable here, where the

statute requires that the testator acknowledged merely the *will.*" (*Gibson* v. *Nelson, supra.*) "Where a testator took a paper from his desk and asked a witness to sign it, and pointed out the place where he wished him to put his name, and the witness did so, not knowing what the paper was and not noticing the signature on the paper, it was held that there was. a good attestation of the will. *Ela et al. Exrs.* v. *Edwards,* 16 Gray, 91." *Hobart* v. *Hobart, supra.*

In *Harp* v. *Parr,* 168 Ill. 459, we say (p. 474): "It is furthermore said, that the subscribing witness, Parr, did not see the signature of the testator, and did not hear the testator acknowledge the signature of the will to be his. We have held that it is sufficient if the testator, in the presence of the subscribing witnesses, acknowledges the will to be his act and deed. Our statute requires the testator to acknowledge the will to be his act and deed, although in some States the statute requires the testator to acknowledge the signature to the will to be his. Where a testator requests the witness to attest his will, this is sufficient to authorize the inference that he had executed the paper as a will, and is equivalent to an acknowledgment that he had signed the paper as a will. * * * The acknowledgment of the testator need not necessarily be manifested by words, but may be indicated by his acts and his conduct."

In *Allison* v. *Allison, supra,* it appeared that the attesting clause was read in the hearing of the testator and the witnesses, reciting that he had executed the instrument as his will, and that the testator thereupon handed the subscribing witnesses the pen and saw them sign as such, although he uttered not a word during the whole time the witnesses were present. Upon this state of facts we said (p. 63): "It is true, the testimony shows no formal acknowledgment in set terms or by words to that effect, and yet the entire transaction amounts to an acknowledgment as distinct and satisfactory as language

could have made it.  *  *  *  The statute does not require the acknowledgment to be in language.  Any act which indicates the same thing with unmistakable certainty will answer as well.  *  *  *  In matters of this sort we must look at the substance rather than the form."

In determining the question of fact involved in the inquiry as to whether the will was duly executed, we are to be governed by the same rules and presumptions which control the trial of other questions of fact.  The will and attestation clause are in the handwriting of the testator.  The testator knew the requisite formalities necessary to the proper execution of the will.  The signature to the will is the genuine signature of Leonard Gould.  The testator procured the authentication of the document by the necessary witnesses.  The attesting witnesses both signed their names to the paper in the presence of the testator and at his request, and understood they were attesting a paper which they believed to have been signed by him.  The will had written thereon, in the handwriting of the testator, an attestation clause reciting all facts necessary to a proper execution of the will.  The testator knew he was making a testamentary disposition of his property, as his will was holographic.  He supposed he had made a testamentary disposition of his property, as he stated after the execution of the instrument he had made a will, and the will was found among his private papers, after his death.  These facts, and the presumptions arising therefrom, show nothing here lacking which the law deems essential to a full and complete acknowledgment of the will.

We are of the opinion that the evidence was sufficient to authorize the circuit court to admit the will to probate.  The judgment of the circuit court will therefore be affirmed.　　　　　　　　　　　　*Judgment affirmed.*