(No. 27201.—

DORIS M. BRONSON, Appellant, *vs.* AUDRIA DOROTHY MARTIN *et al.,* Appellees.

*Opinion filed Sept. 21, 1943—Rehearing denied Nov. 11, 1943.*

PATRICK H. O'DONNELL, and HALL & HALL, for appellant.

CHARLES G. SIEDEL, and W. BEN MORGAN, guardian *ad litem,* for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

The probate court of Kane county denied probate to an instrument purporting to be the last will and testament of Byron C. Bronson, deceased. On appeal the circuit court of that county, after hearing witnesses in addition to those who attested deceased's signature, entered an order denying probate. The instrument, if admitted to probate, devises a freehold in lands in this State and therefore the appeal has been brought direct to this court. The question for decision is as to whether the instrument was duly executed.

Byron C. Bronson was foreman of the machine department of the Elgin National Watch Company, which

position he held for a number of years prior to his death. His department was engaged in building machines for the making of small tools. The part set aside for his office was in the room where a considerable amount of the machinery was located. The two attesting witnesses, Erna Loechelt, now Erna Stene, and Agnes Hebeisen, were employees of the company assigned to office work under Bronson's direction. Each of them had known him for a number of years. The relative location of the desks occupied by Bronson and the attesting witnesses is important in visualizing the circumstances under which the instrument was signed. The desks at which Bronson and Erna Loechelt worked were located end to end, her desk being to the left of his. One seated straight to either desk would face in a northeasterly direction. The desk where Agnes Hebeisen was employed was in front and to the left of the other two. Agnes Hebeisen testified that she was left handed and that when seated at her desk in a position to write, she would face in a northerly direction. The distance from where Bronson was seated at his desk to where Erna Loechelt was seated was about four feet, and the distance from Bronson to Agnes Hebeisen was about eight feet. There was evidence that when the machinery in the room was in operation it created some noise.

It is conceded testator wrote the entire instrument in longhand, including the attestation clause. It was dated August 14, 1940. He died April 11, 1942. Doris M. Bronson, proponent-appellant, is his widow. The contestants-appellees are his only heirs-at-law, the children of a former marriage. Except for a small bequest made to each of the two children, the instrument gives the entire estate to the widow.

Erna Loechelt testified that on the day the will was written she observed testator writing at his desk and that he then said to her: "Watch me while I sign this." That he wrote his name, pulled out a slide on the left of his

desk, placed the instrument on it and asked her to sign, which she did. She testified that after writing her name, testator asked her to take it to Agnes Hebeisen and have her sign it. Agnes Hebeisen was seated at her desk and Erna Loechelt testified that she took the instrument to Agnes' desk and asked her to sign it. She testified that while she was going from her desk to the Hebeisen desk, and while Miss Hebeisen was signing, testator was seated at his desk, looking in the direction where Miss Hebeisen was signing the instrument. She further testified that when the instrument was presented to Agnes Hebeisen for signature, Agnes said "What is the paper?" and that she said, "It is Mr. Bronson's will."

Agnes Hebeisen testified that Erna Loechelt brought the paper to her desk where she was seated and told her to sign it; that she saw the signature of Erna Loechelt and recognized the instrument was in Mr. Bronson's handwriting. She was asked the question, "Did Miss Loechelt say to you that Mr. Bronson asked her to bring it to you to have you sign it," to which she answered that she did not remember. She admitted, however, that when testifying before the probate court her answer to a similar question was that "She just told me to sign it. Mr. Bronson asked her to bring it to me to sign." She testified that she did not see Bronson's signature on the instrument when she signed, but later in her testimony she said that if his signature was then on the instrument the reason for her not seeing it was because she did not look. The further question was asked: "Is it not a fact that Mr. Bronson called to you and asked you to sign this paper?" and her answer was: "I don't remember." On cross-examination, she testified positively that she did not see Byron C. Bronson sign his name and that he did not acknowledge to her that it was his will. Each of the witnesses testified that Byron C. Bronson was mentally competent and each

stated that they had signed a prior will for him. In explanation of discrepancies between her testimony in probate court, the hearing in the circuit court and statements made when not under oath, Agnes Hebeisen said that she had confused the circumstances of the execution of this will with the witnessing of the former will.

Agnes Hebeisen testified that after she signed the instrument she returned it to Erna Loechelt, and that testator was then seated at his desk. Erna Loechelt testified that after Agnes had signed the instrument and handed it to her, she returned it to Mr. Bronson, that he put it in an envelope, sealed it and then wrote something on it. The evidence of other witnesses discloses that after testator's death this instrument was found in a sealed envelope in a safety box with other papers. The envelope was introduced in evidence on the hearing in the probate court but being unable to locate it on the trial in the circuit court, it was stipulated by the adult parties (which included all but Gale Miles Bronson) that the writing in Bronson's hand on the envelope was "My Last Will and Testament" followed by a date, which was the same as the instrument and his signature.

The relative location of the signature of Byron C. Bronson to the attestation clause and the signatures of the attesting witnesses to the clause is as follows:

"(Seal) BYRON C. BRONSON.
We, the undersigned do hereby swear that the testator of this will is of sound mind and thoroughly capable of making a proper disposal of his estate, and that he signed his signature in our presence.               AGNES HEBEISEN
               Witnesses    ERNA LOECHELT"

Section 43, article III, of the Probate Act, (Ill. Rev. Stat. 1941, chap. 3, par. 194,) became effective January 1, 1940. It makes provision for the signing and attestation of wills and is controlling in this case. It directs that every will by which any real or personal estate is devised or be-

queathed shall be reduced to writing, shall be signed by the testator or by some person in his presence and by his direction, and shall be attested in the presence of the testator by two or more credible witnesses. It will be noted that the language used in this section is different from that used in section 2 of the Wills Act, (Ill. Rev. Stat. 1939, chap. 148, par. 2,) which was repealed by the Probate Act. The present section is a more simplified statement of the requisite formalities pertaining to the signing and attestation of wills but the essential requirements are the same as those prescribed in the former act.

Under the present act, every will by which real or personal estate is disposed of shall be, (1) reduced to writing, (2) signed by the testator or by some person in his presence and by his direction, and (3) be attested in the presence of the testator by two or more credible witnesses. Without question requirements numbered 1 and 2 are met in this case. No question is raised in the briefs as to the evidence of Erna Loechelt or the circumstances related by her showing how the instrument was executed.

The questions briefed and argued by the respective parties rest on the different views of the evidence surrounding Agnes Hebeisen's part in the attestation of the instrument. Contestants contend that there is no evidence showing that Agnes Hebeisen saw testator sign the instrument or that he acknowledged the instrument to her. It is not indispensable to a proper attestation of a will that the testator sign the will in the presence of the witnesses if he, by some act or word, subsequently acknowledges the instrument and requests them to sign. (*Flynn* v. *Flynn*, 283 Ill. 206; *Webster* v. *Yorty*, 194 Ill. 408.) It is not necessary that the attesting witnesses see the signature of the testator upon the face of the will (*Brelie* v. *Wilkie*, 373 Ill. 409) or that an acknowledgment of the signature be made to them by the testator, or that they know the instrument is a will. (*In re Will of Barry*, 219 Ill. 391.) The stat-

.utory requirements are satisfied if the testator acknowledges the execution of the will. (*Hoover* v. *Keller,* 339 Ill. 126; *Thornton* v. *Herndon,* 314 Ill. 360; *In re Will of Barry,* 219 Ill. 391.

Any acknowledgment made by the testator that the instrument has been executed by him need not include the word "will" (*In re Will of Barry,* 219 Ill. 391) nor need it be a verbal declaration. In *Gould* v. *Chicago Theological Seminary,* 189 Ill. 282, it was said: "And such acknowledgment need not be in language. Any act, sign or gesture of the testator will suffice which indicates an acknowledgment of the will with unmistakable certainty." Conceding the evidence of Agnes Hebeisen, that she did not see testator sign the instrument and did not hear his request to Erna Loechelt in reference to the witnesses signing, to be true, there is sufficient evidence from which a deduction may be drawn showing that testator's acts and conduct clearly indicate an acknowledgment that he had executed the instrument. Erna Loechelt testified that in answer to a question of Agnes Hebeisen she told her it was Mr. Bronson's will. Such statement, made in the presence of the testator, with the other circumstances shown, clearly indicates that testator acquiesced in the truthfulness of the statement and approved it. That such statement was made is not directly denied. Agnes Hebeisen testified that Erna Loechelt asked her to sign, but she did not remember as to other statements. However, her admission that in her testimony in the probate court in answer to a question of similar import she testified "She [Erna Loechelt] just told me to sign it, Mr. Bronson asked her to bring it to me to sign" tends to show that in the present trial her memory failed on a very material matter. The evidence shows that testator, by his acts, acknowledged the execution of the will.

Furthermore, it has been held that it is not essential to a due attestation that testator himself request a wit-

ness to sign it but it is sufficient if one witness gives the information to another witness, provided, of course, it is done in the presence and hearing of the testator. (*King* v. *Westervelt*, 284 Ill. 401.) Contestants argue that the noise from the operation of the machinery was such as to prevent the statements of the testator and the witnesses from being heard. Witness Hebeisen described it as a "loud noise." It is not conceivable that an office would be maintained in a room where machinery was operating if it created such a noise as to prevent hearing of ordinary conversational tones within a radius of eight and one-half feet. The evidence establishes that testator was attentive to what the witnesses were doing with the instrument and as Erna Loechelt said, he was looking at her when she was passing the instrument to Miss Hebeisen and that he was looking at Miss Hebeisen when she was signing the same.

The further point is made that when Agnes Hebeisen signed the instrument the testator was behind her and could not see her writing her name on the paper. It is undisputed that when she was signing her name he was looking in the direction where she was sitting and evidently knew that she had the will before her and that she was writing on that instrument. Clearly he was in a position to have seen her writing her name on the instrument and that is all the law requires. *Walker* v. *Walker*, 342 Ill. 376.

For the reasons assigned, the will should have been admitted to probate and, therefore, the judgment of the circuit court is reversed and the cause remanded to that court, with directions to enter an order admitting said will to probate.

*Reversed and remanded, with directions.*