*In re* ESTATE OF STANLEY WEAVER, Deceased.—(ROBERT M. TREECE *et al.*, Petitioners-Appellants, *v.* JOHN GILBERT *et al.*, Respondents-Appellees.)

Fifth District   No. 76-441

Opinion filed July 6, 1977.

Stanley W. Narusis, of Fowler & Novick, of Marion, for appellants.

Charles Winters, of Winters & Morgan, of Marion, and W. Philo Gilbert, of Carbondale, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

The proponents of the will of Stanley Weaver, deceased, dated February 5, 1976, appeal from an order of the trial court denying the petition to admit the will to probate and dismissing the proceeding. The basis of the trial court's order was that the standards required by law for execution of the purported will were not met as the purported testator was assisted or his hand guided by another person in making his signature and the testator failed to acknowledge in the presence of witnesses that the instrument was his will, voluntarily made. The issues on appeal are framed from these trial court findings. We reverse.

The petition to admit to probate the instrument purporting to be the will of Stanley Weaver was filed by Robert M. Treece, its named executor. The beneficiaries of this will were four of his nieces. These nieces are the proponents of this will and the appellants herein. By its terms the will of February 5, 1976, revoked all prior wills.

When the petition to admit the will to probate was called for hearing, John Gilbert and John Phil Gilbert were present with their attorney and announced that they were appearing in opposition to the petition to admit the will to probate. Neither of the Gilberts is an heir of Stanley Weaver, but John Phil Gilbert is a residuary legatee and John Gilbert the named executor of a purported prior will of Stanley Weaver, dated June 4, 1974. The purported will of June 4, 1974, was attached as an exhibit to the entry of appearance filed by the opponents at the time of the hearing on the will in question, that dated February 5, 1976. By his prior will Stanley Weaver left his entire estate to his wife but in the event she did not survive him it left the entire estate (except for a specific legacy of $2,000) to his wife's nieces and nephews. A petition to admit the will of June 4, 1974, to probate had been filed prior to the petition in question, and the hearing thereon was awaiting the notice period. The instant petition was heard upon entries of appearance, and no notices were required or given.

Over the objections of the proponents of the will the Gilberts were permitted to participate in the hearing by objecting to evidence, by cross-examination of the witnesses to the execution of the will of February 5, 1975, and by making arguments to the court regarding the efficacy of the will. On motion of the objectors witnesses were excluded from the courtroom during the hearing.

The purported testator, Stanley Weaver, was 86 years of age on February 5, 1976, and a patient in the Herrin, Illinois, hospital. His wife had died in a room across the hall in the same hospital on the previous day. The purported will was executed in Mr. Weaver's hospital room and

was attested by three witnesses, two of whom testified at the hearing to admit the will to probate.

One of the witnesses to the execution of the will was Joseph Helleny, age 85, a close friend of Stanley Weaver for over 50 years and a retired Herrin businessman. He testified that he was asked by Robert Treece to go to the hospital concerning Stanley Weaver's will. When he arrived the other witnesses, Love and Phillips, were already there. He said, "Hello, Stanley" and Weaver replied, "Hello, Joe." The will was read to the testator in his presence and explained to him. The witness asked, "Stanley, do you understand that will?" and he nodded his head. On cross-examination he said that he asked, "Stanley, who do you want to make your will?" and he never answered. He then asked, "Do you want to make it to your nieces?" and he (the testator) said, like this (nodding), yes. Continuing his direct testimony the witness said that the testator then signed the will in the presence of all the witnesses and the witnesses then signed in the presence of each other. He believed the testator to be of sound mind. At the time the testator signed his name to the will he held the pen in his hand and moved his hand but someone, he believed it was Love, held the top of the pen.

On cross-examination the witness testified that the testator never asked anyone to help him with the signing, that he couldn't hold the pen very well and he (the other party) held the top of it. At the time of the signing, the pen was actually in the testator's hand. The following colloquy regarding the signature of the testator then ensued:

"A. I don't remember exactly but Mr. Weaver signed his name and moved his hand.

Q. Did Mr. Weaver have a hold of the top or bottom of the pen?

A. Mr. Weaver . . . I don't remember, but anyhow he had his hand on the pen.

Q. Could it be possible that the other person had the pen in his hand and Mr. Weaver only had his hand on top of the pen?

A. No, sir. He had the pen, one of them had the pen and the other touched the top of it.

Q. You are not certain just how the pen was in his hand?

A. No, sir. I know he touched the top of it.

Q. And you are not certain . . .

A. I know he touched the top of it and moved it. Somebody touched the top of it and he moved the pen in his hand. He got the pen in his hand, see. Somebody touched the top of it and he moved his hand. He signed his name when he moved his hand.

Q. Mr. Weaver didn't move the pen, but the other person holding the top of the pen moved it for him?

A. Mr. Weaver signed it. He signed his name."

The other subscribing witness who testified was Willard Love, age 76, who had known the testator for 50 years and had been intimately acquainted for 18 years. He testified that he was asked by Robert Treece to go to the hospital in connection with Stanley's will. Joe Helleny came in the room after he was there. George Phillips, another hospital patient, was also there. The will was read to Stanley Weaver by Robert Treece, and was then read to him a second time. The following colloquy then ensued:

"Q. And if you look at that document there, did Stanley Weaver sign that document in your presence?

A. He did.

Q. Did he need some help?

A. He needed help to hold the top of the pencil.

Q. Who held the top of the pencil?

A. Mr. George Phillips.

Q. George Phillips held the top of the pencil?

A. Yes.

* * *

Q. And then Stanley wrote his name? Can you describe it to the court? Just the general motion. Okay. Now, after the will was read to Stanley and before he signed the will, was there any conversation between you and Stanley or anybody else there?

A. We asked him if it was his desire to have this will as read and he nodded his head affirmative. We asked him if it was his desire to sign the will and he nodded his head affirmative."

The witness Love further testified that the testator signed the will in the presence of all the witnesses and all the witnesses signed in the presence of the testator. He also stated that he was of the opinion that the testator was of sound mind and memory when the will was executed.

On cross-examination witness Love stated that at the time the will was read he thought the attestation clause signed by the witnesses was also read, but he wasn't sure. The following is part of the colloquy on cross-examination:

"Q. Did you know whether or not he had a partial paralysis of his right hand?

A. I couldn't detect it.

Q. Could he freely pick up the pen and write his name?

A. Well, he gripped the pen, but as I stated before Mr. Phillips held onto the top of the pen.

Q. All right, now, let me ask, was this a pencil or was it a ballpoint pen or what?

A. I don't remember.

* * *

Q. Did Mr. Weaver ask or request Mr. Phillips to assist him in signing his signature?
A. Not to my knowledge.
Q. It was Mr. Phillips that did assist him now?
A. Yes.
Q. And he did touch and get ahold of the top of the pen?
A. Yes.
Q. And he did guide the signature?
A. Yes.
Q. Did Mr. Weaver say any words at all to Mr. Phillips prior to this matter for signing the will?
A. Not to my knowledge.
Q. Mr. Phillips just volunteered his services, is that right?
A. Yes.

* * *

Q. And Mr. Phillips volunteered and helped him because he couldn't do it himself, is that right?
A. He held the top of the pencil while it was signed.
Q. Was he doing this because Mr. Weaver could not handle it or do it himself?
A. Well, he held the pencil."

The witness then again stated, in response to further questions on cross-examination, that the testator had the mind to know what was in the will and he desired to sign it.

The execution of a will must be in compliance with the applicable statute, and courts cannot dispense with or add to the requirements. (*Landry v. Morris*, 325 Ill. 201, 156 N.E. 270.) The applicable statute is section 4—3 of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, par. 4—3), which provides:

"Every will shall be in writing, signed by the testator or by some person in his presence and by his direction and attested in the presence of the testator by 2 or more credible witnesses."

■■■ The object of a hearing when a supposed will is presented for probate is to determine whether it has been executed with the formalities required by law. (*Austin v. First Trust & Savings Bank*, 343 Ill. 406, 175 N.E. 554.) It is not required that the proponent show that the will was valid in all respects, but only that he make proof of the essentials mentioned in the statute and when he has done this he makes a *prima facie* case entitling the will to probate. *In re Estate of Elkerton*, 380 Ill. 394, 44 N.E.2d 148; *Glos v. Schildbach*, 344 Ill. 23, 176 N.E. 65; *In re Estate of Walsh*, 400 Ill. 454, 81 N.E.2d 197.

■■ The keystone question in this case is whether the signature placed on the document we consider was that of the testator. The trial court held

that it was not the testator's genuine signature because "the purported testator was assisted or his hand guided in making his signature by another person." We disagree with the construction placed on the applicable facts by the trial court, which we have partially detailed above, and the reliance placed upon *In re Estate of Kehl*, 397 Ill. 251, 73 N.E.2d 437. In a letter to the parties announcing his decision the trial court stated that the petition must meet the requirements set forth in the *Kehl* case. We have no quarrel at all with the rule of the *Kehl* case but insofar as it relates to the use of a "guided" signature to a will it is factually inapposite to the placement of the signature on the will in question. In *Kehl*, when the testator was handed the pen to sign her name she stated she was "shaky" and would need help. Thereupon her attorney signed her name to the will while the testator rested her hand upon his. The testator had acknowleged the will and signature as hers before the attesting witnesses, and this was held to be sufficient compliance with the statute.

We regard the physical application of the signature of the testator here as being in sharp contrast to that in the *Kehl* case and as not a "guided" signature. Both witnesses to the execution of the will testified that it was Stanley Weaver who held the pen and that he signed the will. Both testified further that without any request from Stanley Weaver to do so George Phillips stepped forward and held the top of the pen while Stanley Weaver signed. It was the testimony of the subscribing witnesses that the signature was that of Stanley Weaver and that George Phillips merely held the top of the pen "to steady it."

It is true that at one point in the extensive cross-examination of witness Love by the objectors the witness answered "yes" to the leading question, "Did he [Phillips] guide the signature?" However, this one response cannot be regarded as the single description of the signing transaction. The extensive questioning of the two subscribing witnesses on both direct and cross-examination and the answers thereto leave no doubt that the signature was that of the testator and that his hand was the moving force in placing his signature on the instrument. The colloquies we have set forth above are merely the core of the testimony. Consideration of the testimony in its entirety is convincing as to the genuineness of the signature of the testator. Neither witness indicated that the signature was made by Phillips—both stated that he only held the top of the pen. (Witness Helleny was not sure who had held the top of the pen, but thought it might have been Love.) Were we to hold to the contrary, we would be permitting a volunteer disinterested person, neither an attorney nor an agent designate, to defeat the making of a will by the testator.

The opponents attack only the validity of the signature of the testator and the acknowledgment of the will by the testator; no attempt is made to assert or prove fraud, forgery, compulsion or other improper conduct

that would invalidate the will. Which brings us to consideration of the question of whether the will should be admitted to probate.

■■ The admission of wills to probate, like the execution of wills, is governed by statute. That applicable at the time the petition in question was heard was section 6—7 of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, par. 6—7), which provides:

"(a) When each of 2 attesting witnesses to a will testifies that (1) he was present and saw the testator or some person in his presence and by his direction sign the will in the presence of the witness or the testator acknowledged it to the witness as his act, (2) the will was attested by the witness in the presence of the testator and (3) he believed the testator to be of sound mind and memory at the time of signing or acknowledging the will, the execution of the will is sufficiently proved to admit it to probate, unless there is proof of fraud, forgery, compulsion or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will. The proponent may also introduce any other evidence competent to establish a will in chancery. If the proponent establishes the will by sufficient competent evidence, it shall be admitted to probate, unless there is proof of fraud, forgery, compulsion or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will."

The witnesses Helleny and Love both testified that they (1) were present and saw the testator sign, that they (2) signed (attested) in the presence of the testator and that they each (3) believed the testator to be of sound mind and memory at the time of signing. As stated above, there was no showing, or attempt to show, fraud, forgery, compulsion or other improper conduct sufficient to invalidate the will. Accordingly, the instrument in question should have been admitted to probate since the requirements of the statute have been met. *Conway v. Conway*, 14 Ill. 2d 461, 153 N.E.2d 11; *Landry v. Morris*.

The letter of memorandum of decision by the trial court stated, "If the deceased had at anytime stated or acknowledged that Exhibit A was his will, then I would have to rule for admission. However, since the evidence showed that all he did was to recognize two persons and nod his head to leading questions, I feel that the standards in *Kehl* have not been met."

■■ There is no requirement that the testator verbally state that the instrument is his will. The statute governing the execution of wills does not require it, and it is so held in the cases. The following is from *Bronson v. Martin*, 384 Ill. 129, 135, 51 N.E.2d 149, 152:

"Any acknowledgment made by the testator that the instrument has been executed by him need not include the word 'will' (*In re*

*Will of Barry,* 219 Ill. 391) nor need it be a verbal declaration. In *Gould v. Chicago Theological Seminary,* 189 Ill. 282, it was said: 'And such acknowledgment need not be in language. Any act, sign or gesture of the testator will suffice which indicates an acknowledgment of the will with unmistakable certainty.' "

And from *In re Will of Lagow,* 391 Ill. 72, 78, 62 N.E.2d 469, 472:

"If the testator acknowledges the instrument before the witnesses to be his act and deed, nothing more is necessary to satisfy this statutory requirement. (*Brelie v. Wilkie,* 373 Ill. 409.) And such acknowledgment need not be in language. Any act, sign or gesture of the testator will suffice which indicates an acknowledgment of the instrument with unmistakable certainty. (*Bronson v. Martin,* 384 Ill. 129.) We have held that if, in the presence of the testator, the instrument is spoken of by another as the testator's will and the witnesses are requested by such third person to sign, the presence and silence of the testator, if he is then of sound mind and memory, give consent to such declarations and amount to an acknowledgment by him of the will as his act and deed. *Craig v. Trotter,* 252 Ill. 228; *Masonic Orphans Home v. Gracy,* 190 Ill. 95; *Harp v. Parr,* 168 Ill. 459."

Witness Helleny testified that the will was read to the testator and he (Helleny) asked, "Stanley, do you understand that will?" and the testator nodded his head yes. Witness Love testified that the will was read to the testator and that we (the witnesses) asked him "if it was his desire to have this will as read" and he (the testator) "nodded his head affirmative." Love also testified that "We asked him if it was his desire to sign the will and he nodded his head affirmative." Considering this positive testimony and the surrounding circumstances the testator must be deemed to have acknowledged the will. The acknowledgment is well within the guidelines of the cases cited above.

■■ We also would mention that there is no requirement that the testator by his own words request the attestation of the witnesses to his will. (*Dubach v. Jolly,* 279 Ill. 530, 117 N.E. 77; *Craig v. Trotter,* 252 Ill. 228, 96 N.E. 1003.) It is not essential that the testator himself request a witness to sign, but it is sufficient if one witness gives the information to another witness, or the instrument is spoken of by another as the testator's will and the witnesses are requested by such third person to sign, provided it is done in the presence and hearing of the testator. (*Bronson v. Martin; King v. Westervelt,* 284 Ill. 401, 120 N.E.241.) Attesting witnesses are regarded, in law, as persons placed around the testator in order that no fraud may be practiced upon him in the execution of the will, and to judge his capacity. *Smith v. Goodell,* 258 Ill. 145, 101 N.E. 255; *Fearn v. Postlethwaite,* 240 Ill. 626, 88 N.E. 1057.

By their cross-examination and arguments the opponents sought to inject into the hearing other matters pertaining to the procurement of the will. Such are not properly cognizable in a hearing to admit a will to probate under section 4—3 of the Probate Act of 1975 but must be shown in a will contest pursuant to article VIII of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, art. VIII).

For the foregoing reasons we reverse the order of the trial court. The cause is remanded with directions to enter an order admitting the will of Stanley Weaver, deceased, dated February 5, 1976, to probate.

Reversed and remanded with directions.

CARTER, P. J., and EBERSPACHER, J., concur.