(No. 26696.—

IN RE ESTATE OF ICY MARIAH ELKERTON.—(EFFIE DE-JONG *et al.,* Appellees, *vs.* HANNAH M. D. FANCHER, Appellant.)

*Opinion filed September 25, 1942.*

ALFRED ROY HULBERT, and EDWIN C. PODEWELL, for appellant.

JOHN S. O'DONNELL, CONSTANTINE G. PITTAS, and CHARLES W. HARRIS, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

On March 11, 1941, Mabel Dougherty, the executrix therein named, presented for probate to the probate court of Cook county, an instrument in writing bearing date of November 22, 1940, purporting to be the last will and testament of Icy Mariah Elkerton, deceased. The court, upon

hearing, held the instrument not to be duly proven and refused to admit the same to probate. An appeal was perfected by Effie DeJong, one of the beneficiaries therein named, to the circuit court of said county, where, upon a hearing, said instrument was held to be duly proven and ordered admitted to probate, and Hannah M. D. Fancher, aunt of the testatrix and one of the heirs-at-law and next of kin, has prosecuted this appeal.

The testatrix died seized and possessed of real estate situated in the State of Illinois, which real estate is disposed of by said will. A freehold, therefore, is involved, and the appeal was properly prosecuted to this court.

The record as presented discloses the following facts concerning the testatrix, the execution, acknowledgment and attestation of her alleged will: The instrument consisted of one page being partly typewritten and partly in the handwriting of the testatrix, and attached thereto and forming a part of the will was a second page, showing a list of personal property bequeathed to certain beneficiaries as shown thereon, it being shown on said will in the handwriting of the testatrix that the page containing the list of personal property was to be considered and was a part of the will of testatrix.

It was by her signed and sealed and had attached thereto, immediately following the attestation clause, the genuine signatures of D. V. Medalie and Emil J. Lauber, which attestation clause as attested by said witnesses is as follows: "This instrument was on the day of the date thereof, signed, published and declared by the said testator, Mrs. Icy Mariah Elkerton, to be her last will and testament in the presence of us who at her request and in her presence and in the presence of each other have subscribed our names hereto as witnesses." Subscribed to the clause are the names of D. V. Medalie, witness, and Emil J. Lauber, witness. These witnesses testified upon the hearing, that they believed the testatrix, at the time she executed the instrument, to be of

sound mind and memory and that there was no fraud, duress, or undue influence.

Medalie, one of the attesting witnesses, testified that he was personnel manager for the Interlake Iron Corporation, Chicago, and lived at 8314 Oglesby avenue; that he had been connected with the steel corporation for 19 years; that he knew the deceased, Icy Mariah Elkerton in her life time and for about seven years before she died; that Mr. Elkerton died in 1934 and that he had occasion to see Mrs. Elkerton at the time of her husband's death due to the fact that he took care of his insurance matters; that on such occasion Mrs. Elkerton asked the witness if he would not bring her a form of will; that such forms were kept in the office of the Interlake Iron Corporation for the use of employees and that he delivered such form to her; that Mrs. Elkerton sent for him about November 22, 1940; that at the time she was living at 7154 May street, the residence being a bungalow and the DeJong family being tenants upstairs; that when he arrived at her home, Mrs. Elkerton said she had been ordered to the hospital and asked Medalie if he would look over her will; that she wanted to make some changes in it and asked witness if he thought it was all right; that he made changes at her suggestion and under her directions, in ink, and initialed them or wrote his name where the changes were made; that he told her she would have to have another witness; that after testatrix signed the will in his presence, he signed it after being requested to do so by Mrs. Elkerton; that he saw her sign the instrument after the interlineations and changes had been made, that is, after she had made these changes and after she had made out the list as above mentioned; that no one else was present except himself and the testatrix and that she signed in his presence; that Medalie told testatrix that she should have another witness to her will and she stated she had a friend who lived right back of her and she would send over and get him; that she

did not send for him while witness was present. It is admitted that the signature of the testatrix as well as the signatures of the witnesses are genuine.

There is no dispute as to the credibility of the first attesting witness who signed as a witness to the will after he had seen the testatrix affix her name to the instrument and who signed at her request and in her presence. The serious question presented here for determination, is as to the signing of the instrument by the second attesting witness who, it is admitted, signed the instrument at a later date and although he signed as a witness in the presence of the testatrix and at her request, the other witness not being present, it is contended that the testatrix did not acknowledge to the second witness that the will was her act. This proposition now presents itself and is the crux of this case as to whether or not the testatrix complied with the statute in acknowledging to the second witness that the previously signed will was her act and deed. There is no dispute that the attestation clause is in due form and that the will bears the genuine signatures of the testatrix as well as the subscribing witnesses.

The second attesting witness, Emil J. Lauber, was called as a witness before the circuit court and, after being first duly sworn, testified that he was a baker by trade and resided at 7153 S. Racine; that he was well acquainted with Icy Elkerton and that she lived right across the alley from him; that he had known her for 30 years and that they were good neighbors; that on November 22, 1940, one of Mrs. DeJong's daughters came over to his house when he was not there and, when he came home in the evening, his wife told him; that he went over to see Mrs. Elkerton; that she stated to him when he arrived, "You know I want to go to the hospital. I want you to sign my will, here, sign these papers, you know, I sign my life away;" that he glanced over the instrument, saw her name on it and then signed it; that when the instrument was presented to

him in court, he stated it was in the same condition as it was at the time he signed it. When witness was cross-examined he stated, "That handwriting and the name written on there (meaning the name of Icy Mariah Elkerton), was written on there when I signed the will. The signature of Mr. Medalie, a witness, was on before I signed it. I am sure that name was on there when I signed it."

Under the above evidence we cannot say that the will was not properly executed and we do not believe that it is seriously contended with the testimony given before the circuit court, that anything else could be done except admit the will to probate. It is urged, however, that this testimony is not the same as given by attesting witness, Lauber, in the probate court when probate of the will was denied, and from reading the testimony it can readily be seen there is a discrepancy and some contradiction.

When witness Lauber testified in the probate court, when asked this question by the court, "For what purpose did you sign it?" (referring to the instrument), he answered, "Well, as I understand the case, Mrs. Elkerton was sick and she was ready to go to the hospital and she sent for me and she asked me, she says, she needed one more signature, I should sign kindly the paper. That's all I know about it." He further stated, "Mrs. Elkerton sent for me and I wasn't home. I went over there that night. Mrs. Elkerton said, 'You know I am going to the hospital and I want you to sign this. I need one more signature so kindly sign it for me.' I said, 'Sure.' "

Another question was asked this witness by the court: "Q. Court: Look at the instrument again and state if it is in the same condition now as it was when you signed it? A: That is the paper I signed. It is just the way it is here."

While it is true from this testimony the testatrix did not specifically say to the witness, "This is my will," her every act, sign and gesture indicated an acknowledgment of the instrument with unmistakable certainty. Such acknowl-

edgment need not be in language. It is not necessary to the valid execution of a will that the testator sign it personally; that the witnesses see his signature; that he declare it to be his will, or that the witnesses know it to be a will or understand that they are witnessing a will. (*Thornton* v. *Herndon*, 314 Ill. 360; *Flynn* v. *Flynn*, 283 id. 206; *Jenkins* v. *White*, 298 id. 502; *In re Will of Barry*, 219 id. 391; *Gould* v. *Chicago Theological Seminary*, 189 id. 282.) Nor is it necessary that in the acknowledgment of the instrument, it should be called a will or that the subscribing witnesses should know that the instrument is a will. *Webster* v. *Yorty*, 194 Ill. 408.

In the case of *In re Will of Barry, supra,* one of the subscribing witnesses by the name of M. L. DeWitt, testified that in the early part of October, 1903, he called at the home of the testatrix to deliver some milk and butter, and that Cora Scherrer, a domestic in the home of the testatrix, called him into the house, and that he went into the library where the testatrix was, the other subscribing witness, Ellsworth Test, coming in soon afterward; that the testatrix was sitting at the desk writing on this paper, (meaning the will) and, after Test had come in, said that she wanted "us fellows" to sign some papers for her; that he, the witness, was sitting some four or five feet from the desk, and that she asked him to sign that, whereupon Test said something about his father telling him to be careful about signing papers, and she said it was some of her own affairs and that he signed that paper at her request below the word "witness." The court *per curiam* decided that any act or gesture of the testator will suffice which indicates an acknowledgment of the will with unmistakable certainty, nor is it necessary that in the acknowledgment of the instrument it should be called a will, or that the subscribing witnesses should know that the instrument is a will.

This court held in the case of *Rupp* v. *Jones*, 289 Ill. 596, that where a will contains a full and formal attesta-

tion clause, the signature to the will is shown to be in the handwriting of the testator and the will is fully identified as the instrument attested by the witnesses, the fact that they do not remember seeing the testator sign the will nor recollect that he acknowledged it to be his act and deed does not preclude the probate of the will. In that case, at page 599, where it was contended that the instrument offered in evidence was not proved to be the last will and testament of one William Rupp and properly attested according to the provisions of our statute on wills, this court said, "It is positively proved that the instrument in question was the instrument witnessed by the attesting witnesses and that each one of them attested it in the presence of the deceased, at his request. It was not necessary that the two attesting witnesses should witness the will in the presence of each other. The statute makes no such requirement. (*Flinn* v. *Owen,* 58 Ill. 111.) The testimony of neither of the attesting witnesses is to the effect that the testator signed or acknowledged the will to be his in their presence, in express terms. Their testimony clearly showed that he requested them to witness the instrument, and remarked to one of them, in substance, that in case anything happened it would be of some protection to his wife, which clearly indicated that they were asked to witness his signature to an instrument in which his wife would be interested or benefited in case of such happening, and clearly indicated that they were asked by him to witness his signature to that will."

In the case at bar the witness was requested by the testatrix to sign as her witness, that she had to go to the hospital and that she was signing her life away, all of which would clearly indicate that she was making a will and asking him to witness same.

It is not unusual for attesting witnesses, when called to testify as to the execution of a will, not to be able to remember all that occurred at the time of the execution or

as to what they saw of the will or of the signature of the testator or testatrix thereto.

·It was held in the case of *Rupp* v. *Jones, supra,* "Where a will contains a full and formal attestation clause, the signature to the will is shown to be in the handwriting of the testator and the will is fully identified as the instrument attested by the witnesses, the fact that they do not remember seeing the testator sign the will or that he acknowledged it to be his act and deed, does not preclude the probate of the will. ( *O'Brien* v. *Estate of Rhembe,* 269 Ill. 592.) The proof was ample in this case to make a *prima facie* case of the due execution of the will."

Thus we have a will on the face of which no defect appears and on which the signatures of the testatrix and subscribing witnesses are genuine. These facts establish a *prima facie* case of due execution. We believe that we can well apply here the case of *Brelie* v. *Wilkie,* 373 Ill. 409, where the court in that case said, "Where the attestation clause is in due form and the will bears the genuine signatures of the testatrix and the subscribing witnesses, it is *prima facie* evidence of the due execution of the will; and this *prima facie* case is not overcome by the mere fact that the subscribing witnesses testify they failed to notice whether the will was signed or not, and cannot remember whether they saw the signature. ( *Hobart* v. *Hobart, supra; Gould* v. *Chicago Theological Seminary, supra.*) Such *prima facie* case will often prevail over the testimony of the attesting witnesses which tends to show that some of the requisites were omitted. ( *Jenkins* v. *White,* 298 Ill. 502; *Rupp* v. *Jones,* 289 id. 596; *Gould* v. *Chicago Theological Seminary, supra.*) It is further the rule that the testimony of subscribing witnesses who seek to impeach a will is to be received with caution and is rightly viewed with suspicion. ( *Gilbert* v. *O'Neale,* 371 Ill. 427; *Szarat* v. *Schuerr,* 365 id. 323; *Kuehne* v. *Malach,* 286 id. 120.) The testimony of subscribing witnesses may be so inherently im-

probable, conflicting in itself, and their conduct be of such a nature as to discredit their whole testimony, even in the absence of contradictory evidence. *Kuehne* v. *Malach, supra."*

We have analyzed the case of *Walker* v. *Walker,* 342 Ill. 376, cited by the appellant and find no fault whatever with the ruling therein or the reasoning of the court. The facts in that case as shown by the evidence justified the holding.

Appellant further insists that due to the inconsistency of the testimony of the attesting witness in giving testimony before the probate court and the circuit court and his failure to deny that he made such statements in the probate court, this witness's entire testimony should be stricken from the record, leaving the testimony of only one credible witness. With this we cannot agree.

It is well settled that it is not enough that a witness may have testified falsely to justify the jury or court in ignoring his evidence, because he may have done so through mistake. In order to justify a court or jury in disregarding the testimony of a witness it must first appear that such testimony is false, and then if the jury or court believe that it was wilfully so, they may disregard it, except in so far as corroborated. *Hanchett* v. *Hass,* 219 Ill. 546.

The trial judge in the circuit court, who heard the testimony of the witness in this case and heard his explanation as to any discrepancy in his testimony, was in better position to judge whether the testimony was false and if so, whether or not such witness wilfully testified falsely. The question of the credibility of the witness was then for the court and the court having given such testimony credit, as evidenced by its judgment, we cannot say it was not warranted in so doing.

In view of the prevailing rule as to the trial judge being in better position to judge the credibility of the witnesses, which in our judgment applies with particular force in this case, and in addition the rule of law that a *prima facie* case

will often prevail over the testimony of attesting witnesses tending to show that some of the requisites were omitted, we are of the opinion the evidence in the record justifies the conclusion reached by the trial judge.

The order of the circuit court is affirmed.

*Order affirmed.*