(No. 28536.—

*In re* WILL OF WILLIAM A. LAGOW.—(MILDRED ANDERSON, Appellant, *vs.* HARRIETT LAGOW *et al.*, Appellees.)

*Opinion filed May 23, 1945—Rehearing denied September 17, 1945.*

SUMNER & LEWIS, of Lawrenceville, and SHULER MC-CORMICK, of Vincennes, Ind., for appellant.

RALEIGH M. SHAW, of Lawrenceville, and NORMAN F. ARTERBURN, of Vincennes, Ind., for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The county court of Lawrence county admitted to probate the purported last will and testament of William A. Lagow, whose death occurred January 21, 1937. On appeal to the circuit court an order was entered denying probate, and Mildred Anderson, the proponent of the will and the granddaughter of the deceased, has appealed to this court.

William A. Lagow, at the time of his death, was the owner of approximately 2700 acres of land and other real estate in Lawrence county, Illinois, and of real estate in the city of Vincennes, Indiana. He was also the owner of personal property in excess of $25,000 in value. He was a widower, his wife having been dead many years. His only heirs were his two sons, Earl Lagow and Vern Lagow, and his two daughters, Alta Snapp and Rela Anderson. His only grandchildren were Harold Snapp and Margaret Mieure, children of Alta Snapp, and appellant, Mildred Anderson, the daughter of Rela Anderson.

When the will was produced for probate, the signature of the testator had been cut therefrom, but the instrument was otherwise intact. The will appointed Fred W. Gee, of Lawrenceville, Illinois, executor and directed that he, as such executor, or any proper person appointed as executor by the probate court of Lawrence county, sell the real estate located in Vincennes, Indiana, and Russellville, Illinois, and administer the proceeds as personal property. Under the terms of the will, the testator devised to each of his children a life estate in certain lands in Lawrence county, specifically designated by legal description. The devises were made in separate and distinct clauses in the will and each contained the same identical phraseology, except for the name of the life tenant and the description of the land therein devised. It was provided therein that after the death of the life tenant the lands should go in fee simple unto, and to the use of, the natural legitimate children of said life tenant. It was further provided that in the event any of said testator's children should die without natural legitimate children surviving, then in such event the lands so devised, upon the death of the life tenant, should go to the remaining children of the testator and to the legitimate natural heirs of their bodies begotten, in equal shares among them, taking *per stirpes*. The remainder of his property was divided equally among his four children.

Five days after the death of William A. Lagow, his four children joined in a petition filed in the county court of Lawrence county, alleging that their father died intestate, and a resident of said county. Letters of administration were, on the same day, issued to Earl Lagow, who administered the estate as intestate property, paying all claims against the estate, including State inheritance and Federal estate taxes, and making distribution among the four children and heirs of the decedent. His final report, filed April 20, 1938, was approved by the county court,

and he was discharged as administrator. On January 11, 1938, the four children of the deceased executed and delivered among themselves quitclaim deeds to the lands in Lawrence county, each child taking, as grantee, a deed from the others to the identical real estate in which he or she was given a life estate under the will.

September 4, 1940, Rela Anderson and her daughter, Mildred Anderson, presented to the circuit court of Knox county, Indiana, the instrument now in question and asked that the same be admitted to probate by that court as the last will and testament of William A. Lagow, deceased. Prior to the commencement of the Indiana proceedings, Earl Lagow had died intestate, leaving his brother and sisters and his widow, Harriett Lagow, as his only heirs-at-law. Harriett Lagow, both individually and as administratrix of her deceased husband's estate, appeared and filed objections, and on January 15, 1942, judgment was entered by the Knox county circuit court refusing probate of the instrument as the last will and testament of William A. Lagow, deceased. An appeal was taken to the Supreme Court of Indiana, which, upon motion of appellees, was dismissed May 27, 1942, because not properly perfected. *Anderson* v. *Lagow*, 220 Ind. 363, 41 N.E. 2d 798.

Thereafter, on November 4, 1942, appellant instituted the present proceeding, seeking to have the alleged will admitted to probate in this State. Harriett Lagow and Vern Lagow resisted her application and are the appellees in this court. Appellees claim that the alleged will was not executed or proved in compliance with the law of this State; that the instrument, if ever properly executed as a will, was revoked by the testator; that appellant is estopped by her knowledge of the intestate proceedings in Lawrence county and by her conduct in first selecting another forum in a foreign State; and that the judgment of the Indiana court is *res judicata* and binding herein. Mildred Anderson, the proponent, who is the appellant here,

attacks the judgment of the Lawrence county circuit court as erroneous in finding the issues in favor of the appellees and denying probate of the instrument as the last will and testament of William A. Lagow, deceased. She contends the alleged will was properly executed and never revoked; that she is not estopped from seeking its probate in this. State; and that the decree of the Indiana court is not *res judicata* and binding herein. These are the questions raised by the assignments of error and argued by appellant and appellees in this court.

One of the important questions presented in this case, and which we think is decisive, is whether or not the will was duly proved in all of its component parts and all of the requirements of the law were met in the execution and attestation thereof.

The attesting witnesses to the alleged will were W. E. Hutton and his wife, Jennie Hutton, who had been friends of the testator for·many years. They testified that on Sunday immediately preceding October 20, 1936, the date on which they signed as witnesses, they visited Mr. Lagow at the hospital in Vincennes, Indiana, where he was a patient; that he told them he had some business or papers he wanted to fix up, but had waited too long; that Mrs. Hutton remained at the hospital with Mr. Lagow while Mr. Hutton went to their home a few blocks away to call Fred Gee, an attorney; that when Mr. Gee arrived at the hospital about thirty minutes later, Lagow gave him some papers he had in a bag there at the hospital and told him what he wanted done, but the Huttons paid no attention to their conversation; and that on October 20, 1936, they were called to the hospital by Mr. Gee, and signed as witnesses. They further testified that they did not see Mr. Lagow sign the alleged will; that it was not signed by him in their presence; that he did not say it was his will or his signature; that they did not read it; that it was not read to them; that Mr. Lagow did not ask them to sign; that

no one said what the instrument was; that they knew nothing about what it was or about its contents; that Mr. Gee, the attorney, who called them to the hospital, was in the room when they arrived and handed them the instrument and asked them to sign; that they signed in the presence of Mr. Gee and Lagow, and left in a few minutes afterward. To impeach the testimony of Mrs. Hutton, the proponent called as a witness the court reporter who took her evidence in the Indiana case. This witness, testifying from her shorthand notes, stated that upon the trial of that case, Mrs. Hutton when questioned about the matter in reply to the question "Did you see him sign it?" answered "I think I did." Mrs. Hutton, however, denied positively that she made such answer, and said that if her evidence was so reported there was a mistake in taking it, because she was firmly convinced that she did not see him sign it. We do not think this testimony of the court reporter sufficient to impeach the evidence of Mrs. Hutton.

Our statute provides for the probate of foreign wills. (Ill. Rev. Stat. 1943, chap. 3, par. 237 *et seq.*) The procedure, except for the manner of proof, is the same as the procedure for the admission to probate of a domestic will. (Ill. Rev. Stat. 1943, chap. 3, par. 238.) The proof may be either by copy (Ill. Rev. Stat. 1943, chap. 3, par. 239,) or by making original proof of the foreign will. (Ill. Rev. Stat. 1943, chap. 3, par. 240.) This last-cited section of our statute specifies three different methods by which original proof of a foreign will may be made, and expressly declares that proof by either of the three methods authorizes admission of the will to probate. The first of such methods is provided by the statute as follows: "A will executed outside of this State in accordance with the law of this State is sufficiently proved to admit it to probate in this State when proved in this State in the manner provided by the law of this State for proving wills executed in this State."

Section 2 of the Wills Act, which was in force and effect on the date of the alleged will (Ill. Rev. Stat. 1935, chap. 148, par. 2,) and which is substantially the same as our present statute, (Ill. Rev. Stat. 1943, chap. 3, par. 194; *Bronson* v. *Martin,* 384 Ill. 129,) requires as essential to the execution of a valid will that the testator sign the will in the presence of the attesting witnesses or that he acknowledge it before them as his act and deed. This provision of the statute is mandatory, and while it is not necessary that a testator both sign and acknowledge in the presence of the attesting witnesses, it is indispensable to the will's validity that he execute the same in the witnesses' presence by one or the other of such methods. If the testator acknowledges the instrument before the witnesses to be his act and deed, nothing more is necessary to satisfy this statutory requirement. (*Brelie* v. *Wilkie,* 373 Ill. 409.) And such acknowledgment need not be in language. Any act, sign or gesture of the testator will suffice which indicates an acknowledgment of the instrument with unmistakable certainty. (*Bronson* v. *Martin,* 384 Ill. 129.) We have held that if, in the presence of the testator, the instrument is spoken of by another as the testator's will and the witnesses are requested by such third person to sign, the presence and silence of the testator, if he is then of sound mind and memory, give consent to such declarations and amount to an acknowledgment by him of the will as his act and deed. *Craig* v. *Trotter,* 252 Ill. 228; *Masonic Orphans Home* v. *Gracy,* 190 Ill. 95; *Harp* v. *Parr,* 168 Ill. 459.

In this case, according to the testimony of the subscribing witnesses, the testator neither signed in their presence nor by any word, act, sign, motion or gesture indicated any acknowledgment of the instrument as his act and deed. The witnesses were asked to sign by Mr. Gee, who handed them the instrument and told them where to affix their signatures. They were not told by either Gee or Lagow

what the instrument was or who was executing it. There was nothing said or done characterizing the instrument as the will, act or deed of Lagow. The Huttons were the only persons testifying as to what took place on the occasion in question. Appellant chose not to call Gee as a witness, and appellees were precluded from doing so. (*Bley* v. *Luebeck,* 377 Ill. 50; *Robertson* v. *Yager,* 327 Ill. 346.) The statute does not contemplate nor permit that witnesses be requested by another, in the testator's presence, to subscribe their names to a paper when they do not know and are not told what the instrument is, or whose act or deed it is, or for whom they are signing as witnesses, and that the instrument so executed be thereafter recognized as a valid will. Courts are not authorized to dispense with any of the formalities which the legislature has prescribed for the execution of a valid will. No method of executing a. will, other than that provided by statute, can be adopted, although in the opinion of the court it would be just as effective as that provided by the statute. (*Schofield* v. *Thomas,* 236 Ill. 417; *Calkins* v. *Calkins,* 216 Ill. 458.) An attestation clause reciting due execution of a will, while entitled to weight in determining whether a will has been legally executed, is not, however, conclusive. (*Landry* v. *Morris,* 325 Ill. 201.) It is true, as appellant claims, that the testimony of subscribing witnesses who seek to impeach a will is to be received with caution and viewed with suspicion and may be so inherently improbable and conflicting in itself as to discredit their whole testimony. We have, however, analyzed the record here and do not find anything to so indicate. In view of the positive testimony of the subscribing witnesses in this case and considering the fact that the will, having been mutilated, was not regular on its face, the record does not support appellant's contention that the alleged will was executed and attested as required by law so as to *prima facie* establish its validity and authorize its admission to probate.

This conclusion makes it unnecessary for us to consider or pass upon the other questions raised and argued on this appeal, since the decision we have reached in regard to the execution of the alleged will, is fatal to appellant's case.

The order of the circuit court is therefore affirmed.

*Order affirmed.*