(No. 31759.—

IN RE WILL OF URIEL J. HAMILTON, Deceased.—(MAMIE H. STUMP *et al.*, Appellants, *vs.* MINNIE HAMILTON, Exrx., Appellee.)

*Opinion filed January 18, 1951.*

SCERIAL THOMPSON, of Harrisburg, for appellants.

LYNNDON M. HANCOCK, and LLOYD H. MELTON, both of Harrisburg, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Uriel J. Hamilton died in November, 1949. His last will, bearing date January 6, 1933, was offered for probate in the county court of Saline County. After hearing the testimony of the attesting witnesses the will was admitted to probate. An appeal was taken to the circuit court of

Saline County, and upon the testimony of the attesting witnesses, and other witnesses, as authorized by section 71 of the Probate Act, (Ill. Rev. Stat. 1949, chap. 3, par. 223,) the order of the county court of Saline County was affirmed, and the probate of the will sustained. An appeal has been brought directly to this court, as the will disposes of both real estate and personal property.

The principal objection made to the probate of the will is that it was not sufficiently identified, and that the facts necessary to the probate of a will were not remembered by the attesting witnesses in sufficient detail to constitute the proof required by law. Complaint is also made that the form of the will is such as to cause it to be regarded with suspicion.

Photostatic copies of the will are included in the abstract. The will is short, and gives one dollar each to the two only children, a son and a daughter, and the balance to his wife. It appears on three sheets of paper. The first sheet contains all of the disposing clauses. The second sheet contains the testimonial clause, containing the signature of the testator, and the third sheet contains the attestation clause, with the signatures of the three attesting witnesses. The first sheet, as well as the second sheet, bears the signature of Uriel J. Hamilton. And the attestation clause, which is discussed considerably in the brief, is as follows: "The above and foregoing Will was signed, sealed, published and declared by said testator, Uriel J. Hamilton, as and for his Last Will and Testament, in the presence of us, who, at his request, in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses this 6th day of January, A.D. 1933," and is signed by the three witnesses.

In the county court only the attesting witnesses were heard. In the circuit court, in accordance with the statute, additional testimony was had, and the appeal is from the order and the proof made in the circuit court of Saline

County. Leo Darnell was a minister, and had known the decedent for many years. He testified that the will bore the genuine signature of the testator; that he was called by the testator as a witness, who said he was making a will. He thinks that the date is approximately the date he was called; that it bears his signature; that it is signed also by Nelson Pankey and Oral Darnell, and that the testator was of sound and disposing mind. His testimony in the circuit court was substantially the same.

Oral Darnell was a brother of the first witness. He recognized his signature to the will. He testified he knew all of the signatures were genuine, but he did not remember the presence of Pankey or his brother, Leo; and in the circuit court he testified he did not remember the circumstances of the will at all, although he testified that the testator was of disposing mind and memory. The third attesting witness, Nelson Pankey, had known the deceased all of his life; he saw him every day; he recognized his signature on the will; he saw the deceased sign, and the other two witnesses sign the will in the presence of the testator, and that the testator was of sound mind and memory. He went over to the office of the lawyer to sign the will at the request of the testator.

In addition to the foregoing witnesses, Mrs. C. V. Lambert was the stenographer for the lawyer, since deceased, who prepared the will. She knew the testator, and is quite certain that she typed the will itself. The deceased and all of the witnesses were in the office where she was working, and the will was executed by the deceased in the presence of all of them. Wilson Pankey, another witness, testified as to the mental capacity of the deceased, as likewise did Joe Pearson. Lila Diamond testified to the soundness of mind of the deceased, and that the signature of Hamilton was his genuine signature. Likewise, Ross Talley and R. E. Manley testified to the genuineness of the testator's signature.

The principal objection made by the appellants consists of calling attention to what the witnesses did not remember. For instance, Mrs. Lambert could not point out the particular reasons why she knew that the will had been typed by her on her typewriter, and yet she is reasonably certain that the paper produced was the identical paper that was signed by the three subscribing witnesses and the testator on the date indicated by the instrument.

Appellants also complain that the attesting witnesses could not relate the exact language used by the testator in requesting them to witness his will, and could not say on what page the testator signed. In fact, the principal objection to the probate of the will consists in the claim that the will was not fully identified as the instrument attested by the witnesses, and that there appeared a defect upon the face because of the fact that the attesting clause was on a separate page from the last page of the will bearing the signature of the testator.

The will was written seventeen years before it was offered for probate. Many of the details of how the persons sat or stood, or which direction the testator faced, or whether the witnesses were looking directly at him and saw him sign, or what language he used to cause them to place their names upon the paper as witnesses, and many other question of a like type were put to the witnesses, which they could not answer with certainty, and they would indeed have been remarkable witnesses if they could have done so. After a lapse of a number of years, where witnesses are called to place their names upon an instrument, such as a will, the details of the surroundings and the conversations, especially if it is in an office of one in which the witnesses are not accustomed to assemble, are not such matters as impress themselves upon the mind of a witness, unless something out of the ordinary occurs.

The important item in the probate of a will is to prove compliance with the statute; that the will be made by a

person of legal age, signed in the presence of attesting witnesses who see the testator sign or hear him acknowledge that he did sign the will, that they attest the instrument in his presence, and that they believe him to be of sound mind and disposing memory. The evidence of the witness Nelson Pankey is positive upon all of these points. The testimony of the witness Leo Darnell, in his direct examination, covers the main essentials, but on the details his memory is faulty. The testimony of Mrs. Lambert, the stenographer, identifies an instrument which was signed by Uriel J. Hamilton, and witnessed by the three attesting witnesses at about the date the controverted instrument bears date, which is sufficient to identify the particular instrument produced for probate as the one executed on January 6, 1933.

When reference is made to the attestation clause it will be found that it recites the name of the testator, that it was his last will and testament, and that it was signed and published by him, in the presence of witnesses, who, at his request and in his presence, subscribed their names as witnesses. While the attestation clause did not recite that the witnesses believed Uriel J. Hamilton was of sound and disposing mind and memory, they all testified to that fact upon the hearing in the circuit court, and their testimony is supported by the testimony of other witnesses.

The law in respect to the proof of wills has been reviewed many times in this court. In the case of *In re Will of Porter,* 309 Ill. 220, circumstances similar to those presented in the instant case were considered. In that case the county and circuit courts refused the probate of a will of a Dr. Porter. The evidence in the circuit court showed that the instrument bore the signature of the testator and the subscribing witnesses, and showed other circumstances tending to show a compliance with the statute as to the presence of the testator and the subscribing witnesses, although the latter were unable to recall the circumstances of the execution of the will. We reversed the judg-

ment of the circuit court because the corroborating evidence heard in the circuit court established beyond all doubt that the will had been duly and properly executed, and should have been admitted to probate.

In that case we followed the case of *Thompson* v. *Owen,* 174 Ill. 229, where an instrument was denied probate on the ground that there was a failure of the proof of due execution. The attesting witnesses testified that they had no recollection of signing their names to the instrument, or of seeing the deceased sign it, or that the deceased ever acknowledged his signature to the instrument to be his signature. It was established that the signature to the instrument was the genuine signature of the deceased, and the attesting witnesses admitted their genuine signatures were appended to the attestation clause. According to the recitals of the attesting clause the will was legally executed, and it was held that the attestation clause was competent to be received in evidence in the circuit court, and the circuit court had a right to consider the clause in connection with other evidence in determining whether the instrument was executed in compliance with the requirements of the statute. And, after a review of many other decisions of this and other courts, we held that the evidence clearly established that the instrument was duly executed, notwithstanding the fact that the two witnesses were not produced who could testify directly that the testator signed the instrument. To the same effect is *Mead* v. *Trustees Presbyterian Church,* 229 Ill. 526.

Prior to 1909 the probate of a will depended entirely upon the testimony of the subscribing witnesses. In that year, however, the probate statute was amended, and in the circuit court upon appeal it is competent to receive evidence other than the testimony of the subscribing witnesses, not only to establish the will but to prove that the statute was not complied with. In *Spangler* v. *Bell,* 390 Ill. 152, we again recognized that upon an appeal from the probate

or county court to the circuit court witnesses other than the subscribing witnesses may be heard, so the will may be established by any evidence competent in chancery for that purpose. This principle has also been recognized and followed in *Szarat* v. *Schuerr*, 371 Ill. 289; *Flynn* v. *Flynn*, 283 Ill. 206; *Bley* v. *Luebeck*, 377 Ill. 50. The rule is well established.

The appellants cite many authorities, but close examination discloses that most of them could just as properly be cited by appellee to sustain the will. One of appellants' arguments is the form in which the will was prepared.. It is claimed that this creates a suspicious circumstance. We have no means of knowing why the will was prepared upon one sheet and part of another sheet, and the attestation clause placed upon the last sheet. It may have been done at the direction of the lawyer, the stenographer, or the testator. The fact that the stenographer was so certain she prepared the will indicates it might have been prepared in that manner by her, but, whatever may have been the reason, we see nothing of a suspicious character about it. The undoubted signature of the testator was at the bottom of the first and second sheets, and the undoubted signatures of the witnesses were signed below the attestation clause on the third sheet. The fact that the witnesses cannot remember the details concerning the form of the will is not in itself suspicious, after a lapse of seventeen years. The attestation clause was regular and in due form, and if there was any question about the authenticity of the signatures and the execution of the will, the clause would, in itself, be *prima facie* proof of the due execution of the will according to law.

Appellants also assign error that they were not permitted to prove whether the testator made statements contrary to the provisions of the will, to the effect that he had made adequate provision for his children other than giving them $1 each, but it has been many times held that a will

194

cannot be rendered ineffective by a contrary statement made by the testator. Statements made by a testator to support the will may be received, but declarations contrary to the terms of the will are not admissible to invalidate it. *Mosher* v. *Thrush,* 402 Ill. 353; *Waters* v. *Waters,* 222 Ill. 26; *Prinz* v. *Schmidt,* 334 Ill. 576; *Parker* v. *Ruley,* 317 Ill. 441.

We have examined the record with care. We think the probate of the will was justified without supporting evidence, since two witnesses testified to all of the facts that were necessary for the proper execution of the will, and the third witness testified to the genuineness of his signature placed upon the attestation clause, which was sufficient in itself. And this proof was strengthened by the additional testimony heard in the circuit court.

We find no error in the order of the circuit court of Saline County upholding the will of Uriel J. Hamilton, and the order of the circuit court is accordingly affirmed.

*Order affirmed.*