In the Matter of the Estate of Arthur D. Hart, Deceased. Irvin E. Thompson, Individually, as Trustee and as Executor of the Purported Will of Arthur D. Hart, Deceased, Petitioner-Appellee, and Nell Hart and Thad S. Hart, Respondents-Appellees, v. Zora Hite, et al., Lessie Hill, a/k/a Leslie Hill, et al., Respondents-Appellants.

Gen. No. 10,742.

Fourth District.

January 26, 1967.

Brunsman, Beam & Crain, of Springfield (John B. Crain, of counsel), and Jack Austin, of Mattoon, for appellants.

Lemna & Lee, of Tuscola, and Williams & Resch, of Casey, for appellees.

TRAPP, J.

This in an appeal from an order of the Circuit Court of the Fifth Judicial Circuit, Coles County, Illinois, admitting to probate an instrument purporting to be the last will and testament of Arthur D. Hart.

The proponent of the will is Irvin E. Thompson who is named executor in the will. The objectors are two sisters of the testator, Zora Hite and Leslie Hill. The record does not make the status of the other objector appellants clear.

The will devises certain farmland to the widow, Nell Hart, creates a trust for the benefit of brothers and

sisters, including Zora Hite and Leslie Hill, as to certain farmland, and devises the residue to the widow.

The will contains the following attestation clause:

"We, the undersigned, do hereby certify that the said Arthur D. Hart signed the above and foregoing paper in our presence and declared the same to be his Last Will and Testament on this, the 14th day of July, A. D. 1964, and requested us to sign the said will as witnesses, which we did in his presence and in the presence of each other, believing the said Arthur D. Hart to be fully possessed of all of his faculties and of sound mind and memory and in every way capable of making his Last Will and Testament."

The attestation clause was signed by the two witnesses, William W. Easton and Robert F. Swengel.

The witness, Robert F. Swengel, was a practicing physician and the testator was his patient. Dr. Swengel had known the testator for two and one-half years prior to his death. He testified positively that, in his opinion, the testator was of sound mind. On direct examination he testified in reference to soundness of mind: "To the best of my knowledge he was." On additional examination by the widow's attorney he testified: "In my opinion he was of sound mind."

William Easton, the other attesting witness, testified as follows:

Interrogation by Mr. Raymond Lee:

"Q. Will you state your name, please?

"A. William Wayne Easton.

"Q. And where do you reside?

"A. Mattoon, Illinois.

"Q. And what is your business or profession?

136

"A. I'm a rate clerk, at A & B Transfer, Mattoon.

"Q. Directing your attention, Mr. Easton to the 14th day of July, 1964. Where were you working at that time?

"A. At Mattoon Memorial Hospital.

"Q. I hand you a document which purports to be the Last Will and Testament of Arthur D. Hart; directing your attention to the next to the last page thereof, whose signature appears thereon?

"A. Arthur D. Hart.

"Q. Did he sign this instrument in your presence?

"A. He did.

"Q. Directing your attention to the last page thereof, does your signature appear thereon?

"A. Yes, sir.

"Q. Did you sign this instrument at Mr. Hart's request?

"A. I did.

"Q. Did you sign it in his presence?

"A. I did.

"Q. Was it signed in his presence and that of Dr. Swengel's?

"A. It was.

"Q. Do you believe at the time of signing this Will, that Arthur D. Hart was of sound and disposing mind and memory?

"A. To the best of my knowledge, he was.

"Q. Do you have an opinion?

137

"A. No, sir.

"Mr. Williams: How long did you know Mr. Hart?

"A. I did not know the man personally; I was working at the hospital and was called to witness this Will.

"Mr. Williams: And asked to be a witness?

"A. Yes, sir.

"Q. Did you speak any to Mr. Hart at the time?

"A. No, sir.

"Q. Did he speak to you?

"A. No, sir, other than his request to witness the Will.

"Mr. Williams: That's all.

"Mr. Lee: I have one further question, Mr. Easton, was Mr. Hart under any duress or coercian (sic) at the time the Will was signed at your knowledge?

"A. No, sir, not to my knowledge."

The objectors contend that there is a failure on the part of the witness, William Easton, to testify to his belief in the soundness of mind of the testator and that, therefore, there is a failure to produce two witnesses who testify to a belief in the soundness of mind and memory of the testator as required by chap 3, § 69 (Ill Rev Stats, 1965). That section of the statute is as follows:

> "When each of 2 attesting witnesses to a will testifies before the court (a) that he was present and saw the testator or some person in his presence and by his direction sign the will in the presence of the witness or that the testator acknowledged it to the witness as his act, (b) that the will was at-

138

tested by the witness in the presence of the testator, and (c) that he believed the testator to be of sound mind and memory at the time of signing or acknowledging the will, the execution of the will is sufficiently proved to admit it to probate unless there is proof of fraud, forgery, compulsion, or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will. The proponent may also introduce any other evidence competent to establish a will in chancery. If the proponent establishes the will by sufficient competent evidence it shall be admitted to probate unless there is proof of fraud, forgery, compulsion, or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will."

Objectors rely upon Hill v. Kehr, 228 Ill 204, 81 NE 848 and Allison v. Allison, 46 Ill 61, as sustaining their point of view. In Hill v. Kehr, the witness was asked whether he believed at the time of the execution the testatrix was in her right mind, and he answered, "I have no reason to question it because I didn't know the lady." It affirmatively appeared that he did not read the attestation clause. He did not know whether the testator signed in his presence. He did not know it was a will. The request to sign as a witness came from the *son* of the testator. In Allison v. Allison, the witness testified that he did not know whether the testator was of sound mind or not.

██ It should be noted, among other things, in evaluating these two cases, that the statute at that time provided for admission of a will by the probate or county court, and nothing could be considered but the testimony of the witnesses. Even on trial de novo on appeal to the circuit court from an order admitting to probate, no other evidence could be considered. A different rule applied on appeal from an order *denying* probate. There, any

matter which could be considered by a court of chancery on a contest could be considered to support the will. See Andrews v. Black, 43 Ill 256 on 259; Weld v. Sweeney, 85 Ill 50; and Greene v. Hitchcock, 222 Ill 216, 78 NE 614. Now the original probate is made in the circuit court, and the proponent may introduce, and the court consider, any evidence competent to establish a will in chancery.

Applying the above distinction between appeals from orders granting probate and orders denying probate, we note as early as Thompson v. Owen, 174 Ill 229, 51 NE 1046 (1898), the weight to be given to an attestation clause on appeal from an order refusing probate. On page 232 the Supreme Court said:

"The court rejected from consideration the recitals of the attestation clause as being incompetent. The will bore the genuine signature of the alleged testator; the attesting clause recited full compliance with all the requirements of the statute with relation to the execution of the will, and bore the genuine signatures of the attesting witnesses; no evidence appeared tending to disprove the observance of any requirement of the statute; circumstances were proven corroborative of due execution; the attesting witnesses were produced, identified their signatures to the attesting clause, gave no testimony tending to contradict anything recited in said clause; *and in such state of circumstances we think the attesting clause was competent to be received in evidence and to be considered in connection with the testimony of the two attesting witnesses on the question of the execution of the will by the said deceased.* Such, of course, is not the rule when a will is presented to the county court for probate and the attesting witnesses are present in that court and under no disability, for the reason it is expressly provided, in order to authorize a county court to admit a will to probate,

the execution of the will shall be proven by two or more credible witnesses, declaring, on oath or affirmation, they were present and saw the testator sign the said will in their presence, or that the testator acknowledged to them that the instrument purporting to be his last will was his act and deed. (Ill Rev Stats sec 2, chap 148, entitled 'Wills.') But it is also expressly provided by section 13 of the same chapter, *that if the probate of any will shall have been refused by any county court and an appeal shall have been taken from such order of the county court to the circuit court, it shall be lawful for the party seeking probate of such will to support the same, on the hearing in the circuit court, by any evidence competent to establish a will in chancery."* (Emphasis supplied.)

The same principles of the then existing differences from an appeal to the circuit court from an order granting probate, and an order refusing probate, and of the evidentiary character of an attestation clause, were noted in Mead v. Presbyterian Church, 229 Ill 526 on 529, 82 NE 371.

In listing the requirements for admission to probate the statute makes no distinction as to the proof of the three requirements.

In Jenkins v. White, 298 Ill 502 on 508, 131 NE 634, where a witness testified that only one of the three pages was present when she signed, the court said:

"Where the attestation clause is in due form and the will bears the genuine signatures of the testatrix and the subscribing witnesses it is prima facie evidence of the due execution of the will, and this prima facie case will not usually be overcome because one of the subscribing witnesses testifies that all of the requirements of the statute were not complied with. (Thompson v. Karme, 268 Ill 168; Rupp v.

141

Jones, supra.) The testimony of the subscribing witness who seeks to impeach the will should be received with caution, particularly where the weight of the evidence is against her testimony, which is conflicting in itself and positively contradicted by two other witnesses who appear to be credible witnesses."

In Hart v. Hart, 290 Ill 476, 125 NE 366, where an attorney who had signed an attestation clause stating a belief in the soundness of the mind of the testator and later expressed an opinion that the testator was under the influence of sedatives and was not of sound mind and memory, the court said, (p 483) :

"The law is that where the attestation clause to a will recites all the particulars of a good execution as required by the statute, such clause will be prima facie evidence of the due execution of the will. Such proof will often prevail over the testimony of the attesting witnesses which tends to show that some of the requisites are wanting."

Objectors attempt to distinguish Hart v. Hart by pointing out that two attesting witnesses did testify to the requirements. It is clear nevertheless, that the court weighed Attorney Monahan's signature on the attestation clause against his testimony.

In Loomis v. Campbell, 333 Ill App 617, 78 NE2d 143, reference is made to Bley v. Luebeck, 377 Ill 50, 35 NE2d 334, which stated, (p 57) :

"Under said statutes, as construed by this court, the law is, therefore, definitely settled that on an appeal to the circuit court from an order of the probate or county court, *either allowing or denying probate of a will,* the proponent may support the will by any evidence competent to establish a will in chancery, but the contestant is limited, as to evidence

142

of the execution of the will and the testamentary capacity of the testator, to the subscribing witness." (Emphasis supplied.)

The circumstance presented by Hill v. Kehr, 228 Ill 204, 81 NE 848, and Allison v. Allison, 46 Ill 61, could not arise today—that is to say, we no longer have the rule that on appeal from an order allowing probate only the testimony of two witnesses, and not other facts such as the attestation clause may be considered.

In the Loomis case where one of the attesting witnesses denied that the paper was a will when she signed it and said it was blank, the court relying on the other attesting witnesses and intrinsic evidence to be gained from the paper itself, dispensed with the requirement that two witnesses testify to the requirements set forth in the statute, and said (p 622) :

> "It is settled law that execution of an instrument may be sufficiently proved where one witness testifies positively to the requisites of execution, and the other witness does not recollect or denies compliance with the statutory requirements. (68 CJ 1022; Mead v. Presbyterian Church, supra; In re Will of Porter, 309 Ill 220.) Under those circumstances it is the province of the circuit court to weigh the evidence and the circumstances surrounding the execution of the will. (In re Will of Porter, supra, p 224.) In so doing, it is generally held that where an attesting witness impeaches or denies the execution of the will or any fact essential to establish its validity, such testimony is entitled to little credence, and should be viewed with suspicion and caution. (Jenkins v. White, 298 Ill 502, 79 ALR 397; 68 CJ 1020.)"

■■■ Where the testator and two attesting witnesses in fact signed the will, every presumption will be indulged

in favor of the execution and attestation of the will. Loomis v. Campbell, 333 Ill App 617, 78 NE2d 143; In re Estate of Willavize, 21 Ill2d 40, 171 NE2d 21.

█ Later cases supporting the duty of the trial court to weigh the evidence are In re Will of Rutledge, 5 Ill App2d 355, 125 NE2d 683 and Knaphurst v. Lindauer, 61 Ill App2d 269, 210 NE2d 23. In the Rutledge case, the witness first stated of the testator, "His appearance was O. K. to me," and later on direct question as to whether he had an opinion that the testator was competent to make a will, answered, "That never entered by mind." If taken literally and alone this last statement would mean he had no opinion. The will was admitted to probate. In the Lindauer case the court repeated the well known principle that the trial court's judgment will not be reversed on appeal unless it is manifestly against the weight of the evidence.

A recent case emphasizing the importance of the attestation clause is In re Estate of Velie v. Valdes, 25 Ill2d 188, 183 NE2d 515.

█ We do not think it necessary to go as far as the decided cases above referred to to sustain the order of the probate in this case. We have set forth the exact questions and answers of the witness. First it is difficult to tell whether the witness understood the question, "Do you have an opinion?" The question itself requires a reference to preceding questions to give it meaning. It is not fixed as to subject matter or date. It is not clear whether, if the witness understood the purport of the question, he thought that he should have some specific data as the basis of his opinion. He does not, in any way, contradict the statement of belief in the complete attestation clause. He did state that the testator requested him to witness the will which is, in itself, considerable evidence of competency. The trial court also had before it the attestation clause, and the positive testimony of

144

the family physician as to the testator's soundness of mind.

The order of the Circuit Court of the Fifth Judicial Circuit, Coles County, Illinois, is affirmed.

Affirmed.

CRAVEN, P. J. and SMITH, J., concur.