RUBY M. YOUNG, Petitioner-Appellant, *v.* LOUIS YOUNG *et al.*, Defendants-Appellees.

(No. 73-316;

Fifth District—June 18, 1974.

G. MORAN, P. J., dissenting.

Miller & Pfaff, of Salem, for appellant.

Lackey & Lackey, of Centralia, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from an order of the circuit court of Marion County denying appellant's, Ruby M. Young's, petition to probate a document purported to be the will of the deceased, Roger C. Young.

The issue before this court is whether or not a document, which does not include an attestation clause, can be admitted to probate when none of the subscribing witnesses are able to testify either that it was signed by the decedent in their presence or that the signature of the decedent was acknowledged at the time they, the witnesses, affixed their signatures to it.

Section 43 of the Probate Act (Ill. Rev. Stat., ch. 3, par. 43), provides that:

> "Every will by which any real or personal estate is devised or bequeathed shall be reduced to writing, shall be signed by the testator or by some person in his presence and by his direction, and shall be attested in the presence of the testator by two or more credible witness."

The requirements of the foregoing provisions are circumscribed by section 69 of the Probate Act (Ill. Rev. Stat., ch. 3, par. 69), which provides in part that:

> "When each of 2 attesting witnesses to a will testifies before the court (a) that he was present and saw the testator or some person in his presence and by his direction sign the will in the presence of the witness or that the testator acknowledged it to the witness as his act,  *  *  *."

This court is asked to determine whether or not the requirements contained in the aforementioned provisions of the Probate Act are

mandatory. This issue was resolved in the case of *In re Will of Lagow*, 391 Ill. 72, 62 N.E.2d 469, wherein the supreme court stated that the law then in effect (Ill. Rev. Stat. 1943, ch. 3, par. 194), which is the present section 43 of the Probate Act (Ill. Rev. Stat. 1971, ch. 3, par. 43):

> "* * * requires as essential to the execution of a valid will that the testator sign the will in the presence of the attesting witnesses or that he acknowledge it before them as his act and deed. This provision of the statute is mandatory, and while it is not necessary that a testator both sign and acknowledge in the presence of the attesting witnesses, it is indispensible to the will's validity that he execute the same in the witnesses' presence by one or the other of such methods." (391 Ill. at 78.)

The court further stated:

> "Courts are not authorized to dispense with any of the formalities which the legislature has prescribed for the execution of a valid will. No method of executing a will, other than that provided by statute, can be adopted, although in the opinion of the court it would be just as effective as that provided by the statute." (391 Ill. at 79.)

In view of the foregoing this court concludes that the requirements embraced in section 43 and section 69 of the Probate Act are mandatory.

The instrument presented for probate was typed on the letterhead of "Roger C. Young, Real Estate Broker, 222 North Broadway, Salem, Illinois." After its final provision was typed the word "Signed" followed by the handwritten signature and words "Roger C. Young, Salem, Illinois." This was followed by the typed words "this 16th day of March 1946." To the lower left was the typed word "Witnesses" under which appeared the signatures of Mrs. Walter Atkins, Mr. Howard Hunter and Edgar B. Kagy, in that order. On the petition of the widow Ruby M. Young, who was by the instrument appointed "Administrator without bond," to admit the instrument to probate, those three persons were called to testify.

The first witness, Mrs. Walter Atkins, on direct examination testified that she had seen the document before; that her name was attached thereto and that she signed "as a witness." She further testified in response to the inquiry, "I'll ask you if you remember whether or not Mr. Roger C. Young signed that document?" that "I didn't see him." She further testified that she did not know Mr. Young's signature and answered "Yes" to the inquiry, "The only thing you recall is you have seen that document and that's your signature?" She was never asked whether the instrument bore Mr. Young's signature at the time she signed it, nor was she asked if Mr. Young acknowledged a signature on the instrument to be his. She was not cross-examined.

The second witness, Mr. Howard Hunter, on direct examination testified that he was acquainted with Mr. Young during his lifetime. His direct examination follows:

"Q. I will hand you a document and ask you to examine it.

A. That's my signature.

Q. Have you ever seen that document before?

A. I signed it over at the funeral home.

Q. I'll ask you who else signed it while you were there?

A. Nobody while I was there. He just brought it in and asked me to sign it. He lived on North Broadway and I was working there at McMackin's Funeral Home and he brought it in and wanted to know if I'd sign it and I said, yes. I signed it and he left and as far as I know he went home.

Q. Did he say that he had signed it?

A. To the best of my knowledge it was signed.

Q. What other names were on there?

A. I don't remember any other names.

Q. Do you know whether or not you were the first to sign as a witness?

A. I can't say whether I was or not but it seems like, to the best of my knowledge, I was."

His cross-examination follows:

"Q. Did Mr. Young ever tell you that was his signature?

A. No. I took it for granted if his signature was on it at the time that it was his because he brought it in for me to sign. I think he said he was leaving on a two weeks trip.

Q. The signature was there when you first saw it.

A. To the best of my knowledge it was. I'm not saying it was or wasn't. I don't really know."

From the fact that his signature did not appear as the first, although he thought he was the first to sign and the fact that he was not positive that Mr. Young had signed the instrument before it was brought to him, we can understand how the trial court who heard and saw the witness would conclude, as did the witness himself, that he didn't "really know" whether Mr. Young's signature appeared on the instrument at the time the witness first saw it, and that the witness's actual knowledge of the events and circumstances surrounding the affixation of his own signature was very limited on the essential points.

The third witness, Edgar Kagy, after identifying himself by name was asked and answered on direct examination as follows:

"Q. I'll hand you this document and ask you who did you see sign that document?

246

A. I didn't see anybody only Roger Young.

Q. Did you see Roger Young sign the document?

A. Yeah, he signed it.

Q. In your presence?

A. Well, I forgot all about it.

Q. But you did see Mr. Roger Young sign it?

A. That's right and that's my initial.

Q. I'll ask you whether or not you saw Mrs. Atkins sign this as a witness?

A. No, I did not.

Q. Or anyone else?

A. No, I did not.

Q. Who was present when you signed for Mr. Young.

A. I can't honestly answer that.

Q. Where was that, at the funeral home?

A. No.

Q. But you were present when Mr. Roger Young signed it?

A. Yes sir."

On cross-examination, after testifying that he did not remember where he was at the time of signing his name on the instrument, he was asked, and answered:

"Q. Now then, do you remember whether or not Roger Young had already signed this when you signed it or whether you signed it first?

A. No sir, I can't answer that.

Q. Your name appears to be on the bottom of three lines here.

A. Right.

Q. Do you know whether or not the other two people had signed that before you did?

A. All I know, that's my signature.

Q. Did you see Roger Young sign this?

A. No, it's been so long I've forgot.

Q. Is that your answer, you don't know whether or not.

A. No, I do not.

Q. Were Mrs. Atkins and Mr. Hunter there with you at the time you signed your name to this?

A. No, they wasn't.

Q. To the best of your recollection were you and Mr. Young the only people that were there at that time?

A. To the best of my recollection, yeah."

On further direct examination, the witness was asked and answered:

"Q. Mr. Kagy, who brought this to you to be signed?

A. You know, it's been so long I forgot about ever signing it but that's my handwriting there. The rest of it I don't know.

Q. Do you know whether or not that is Mr. Roger C. Young's handwriting.

A. It looks like it."

On recross, the witness was asked and answered:

"Q. So that I understand one of your answers, are you saying that all you really know about this case is that's your signature.

A. That's my signature.

Q. That's all you remember about it?

A. Yes."

From this testimony, we believe the trial court who heard and saw the witness, could conclude as did the witness himself, that all the witness remembered of the events and circumstances surrounding the affixation of his signature was that the instrument bore his signature.

At this time the court indicated that there was insufficient evidence and that there was not compliance with the statutory provisions to admit the will to probate. The petitioner requested a continuance of one week, which was granted.

At the continued hearing Edgar Kagy was again called and testified as follows:

"Q. Mr. Kagy, you testified in this case last week, did you not?

A. Yes.

Q. And you testified regarding certain documents. I hand you this document which purports to be the last will and testament of Roger Young, which is dated March 18, 1946, and I will ask you to tell the Court if that is the same document you testified about last week.

A. I will say that is my signature.

Q. Is that the same document you looked at last week?

A. That I can't say. It may be. I believe it is.

Q. These are the same documents you looked at last week?

A. Yes."

The petitioner, Ruby Young, was then called and testified that she first saw the instrument "when they told me I had a right to go over to the Salem bank and look at my box" and that she had never seen the instrument before that time. She further testified that it bore the signature of Roger C. Young, a matter that is not disputed in this cause. The order denying probate was then entered, and this appeal perfected.

Appellant contends that the purported will should not be denied

probate merely on the ground that the witnesses cannot remember whether it was properly executed. As authority for this proposition appellant cites *Conway v. Conway*, 14 Ill.2d 461, 153 N.E.2d 11. In that case our supreme court stated:

> "* * * *if the attestation clause shows on its face* that all the forms required by law have been met, and the signatures on the instrument are admittedly genuine, the presumption of due execution must prevail unless clear and affirmative proof shows the contrary." (14 Ill.2d at 466-467.) (Emphasis added.)

In 94 C.J.S. Wills § 188(c)(3), at page 1019, the following statement is made:

> "Thus, a mere request by the testator to witnesses to attest his will is a sufficient acknowledgment of his signature under a statute which requires signing by the testator in the presence of the witnesses or an acknowledgment by him that it is his act or deed, * * *"

As authority for the above proposition two cases are cited: *Harp v. Parr*, 168 Ill. 459, 48 N.E.2d 113, and *Hobart v. Hobart*, 154 Ill. 610, 39 N.E. 581. Both of these cases are distinguished from the instant case by the fact that in each of these cases an attestation clause was contained in the purported will. From an examination of these and other cases regarding the presumption of validity of a will which bears the genuine signature of a purported testator and witnesses, it is apparent that such presumption cannot be relied upon to make a prima facie case for admission to probate in the absence of an attestation clause. *In re Estate of Willavize*, 21 Ill.2d 40, 171 N.E.2d 21; *In re Estate of Elkerton*, 380 Ill. 394, 44 N.E.2d 148; *In re Estate of Russell*, 130 Ill.App.2d 839, 264 N.E. 2d 269; *In re Estate of Hart*, 79 Ill.App.2d 134, 223 N.E.2d 466.

■■ In the instant case, where the purported will does not contain an attestation clause, the proponent of the will has the burden of proving its proper execution by other evidence. (*In re Estate of Willavize*, 21 Ill.2d 40, 171 N.E.2d 21; *In re Estate of Thomas*, 6 Ill.App.3d 70, 284 N.E.2d 513.) The appellant has furnished no such evidence. Here there was no positive testimony that the will was signed in the presence of any of the witnesses, nor is there testimony that at any time Roger C. Young acknowledged his signature to any of the witnesses; nor, in our opinion, can such signing in the witnesses' presence or acknowledgment be reasonably inferred from the evidence presented. There is no attestation clause and we cannot dispense with the required formalities under *In re Will of Lagow.*

In the absence of such evidence the circuit court refused to admit the purported will into probate. We find no reason to disturb this order.

The order of the circuit court denying the admission into probate is therefore affirmed.

Order affirmed.

CREBS, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN dissenting:
The will in question reads as follows:

"ROGER C. YOUNG
Real Estate Broker
222 North Broadway
Salem, Illinois

March 16, 1946

I, Roger C. Young being of sound mind make this my last will and testament as follows:

I bequeath to my son Louis H Young One Dollar, to my daughter Dorothy Floella Young house and lot together with household goods located at 509 South Jefferson St. Salem, Illinois, to my daughter Mrs. Margaret Elizabeth Erwin house and lot located at 508 South Washington St. Salem, Illinois and to my other daughter Mrs. Agnes Evelyn McCullah house and lot located at 512 South Washington St. Salem, Illinois.

All other property both real and personal I bequeath to my beloved wife Ruby Muriel Young consisting of Royalties, lands in Illinois and Texas, Bonds if any, Postal Savings, Cash in Banks and all interest held in houses and other Real Estate owned by me.

I make the above bequests of my own free will and appoint my wife Ruby Muriel Young Administrator without bond.

(Signed) Roger C. Young
Salem, Illinois
this 16th day of March, 1946

Witnesses
Mrs. Walter Atkins
Mr. Howard Hunter
Edgar B. Kagy"

Because there was no formal attestation clause and none of the witnesses could remember whether or not the will was signed by the testator when they signed it, the majority holds the evidence was insufficient to prove the will was signed by the testator in the presence of two of the witnesses or that he acknowledged it to them as his act.

This rationale does not follow the majority rule in this country and particularly does not follow the rule in Illinois.

57 Am. Jur. *Wills* § 867 (1948), at page 577, reads:

> "Although there is some authority to the contrary, the better rule is that a presumption of due execution may arise on proof of the genuineness of the signatures of the testator and the attesting witnesses, notwithstanding the attestation clause of the will is incomplete or defective in failing to recite the observance of some formality required by statute in the execution of wills. In fact, according to many authorities, the due and proper execution of a will may be presumed on proof of the circumstances stated above, even though there is no attestation clause, as where the witnesses are merely indicated to be such by the word 'witnesses' appended to their signatures.[14]
>
>    *   *   *

In *Mead* the supreme court held that a will in the handwriting of the testator and found among his papers, duly signed by him and attested by witnesses who wrote the word "witness" after their names, was entitled to probate, even though there was no formal attestation clause and the witnesses, although they remembered signing the will, did not recollect whether they signed the will at the testator's request and in his presence and the presence of each other or what was said at the time of the transaction, where other evidence clearly established the genuineness of the will and signatures and that the testator was of sound mind and memory. The genuineness of Young's will, the signatures thereon and the fact that Young was of sound mind and memory are undisputed.

*Mead* was quoted with approval in the case of *In re Will of Hamilton*, 408 Ill. 187, where the court stated that "the fact that witnesses cannot remember the details concerning the form of the will is not in itself suspicious after a lapse of 17 years." (408 Ill. 187, 193.) In the present case there was a lapse of 27 years.

The majority interprets the case of *In re Estate of Willavize*, 21 Ill.2d 40, to mean that where a will does not contain a complete attestation clause, there is no presumption in favor of its proper execution. The *Willavize* case actually held that there is a presumption in either case, but where the attestation clause is complete, the presumption is even stronger. The supreme court said, at page 44:

> "It is, of course, a well-established rule that every reasonable

---

[14] Mead v. Presbyterian Church, 229 Ill. 526, 82 N.E. 371, 14 LRA(NS) 255, 11 Ann Cas 426; German Evangelical Bethel Church v. Reith, 327 Mo 1098, 39 SW2d 1057; 76 ALR 604 (dictum). Anno: 76 ALR 622.  * * *"

presumption will be indulged in in favor of the execution and attestation of a will. This is an even stronger presumption in those instances where the will was apparently executed in due form and the signatures are admitted to be genuine. [Citation.]"

*More v. More,* 211 Ill. 268, involved a case where the supreme court reversed a circuit court ruling that there was insufficient evidence to admit a will to probate. The will was signed by the testator and witnesses as follows:

"George More. (L.S.)
Witnesses: Wm. Fuller, of Clinton, Illinois.
Jas. A. Wilson, Clinton, Illinois."

Both witnesses predeceased the testator. The proof disclosed that the signature of the testator and the witnesses were genuine; that the body of the will was in the handwriting of the testator; that the word "witnesses" was also in the handwriting of the testator; and that the testator transacted his business competently.

Appellee contended there was no proof that testator was of sound mind and memory when he signed the will or that the witnesses signed in the presence of each other or in the presence of the testator or at his request. The supreme court said at pages 271-72:

"Out of the evidence in this case the presumption arose that the witnesses duly attested the will in the presence of the testator. If a perfect and formal attestation clause, reciting that all statutory requirements had been complied with, had been signed by the attesting witnesses, the presumption of regularity and compliance with statutory requirements would have arisen and warranted the admission of the will to probate. * * * It is not indispensable, however, that the witnesses shall sign a formal clause of attestation. * * * The attestation clause may consist of a single word, as 'witness,' 'attest' or 'test,' or there may be no words at all. * * * In case of the death of the witnesses to a will which on the face thereof appears to have been regularly executed and is shown to bear the genuine signatures of the testator and the witnesses, compliance with the statutory requirement is to be presumed, in the absence of express recitals to that effect. * * *

The act of attestation of a will is not merely to witness the mere fact that the testator signed the will or acknowledged that he had signed the same, but the attention of the witnesses is called, by the act of attestation, to the mental condition of the testator and as to whether he is possessed of a sound, disposing mind, and,

therefore, if the will appears on the face thereof to have been duly executed and it is proven that the signatures thereto are the genuine writing of the maker and the witnesses, if the attesting witnesses be dead an inference arises, from the mere fact of attestation, that the witnesses believed that the testator possessed testamentary capacity at the time of the execution of the will, though there be no formal recital to that effect. * * * This inference fairly arose in the case at bar, and was supplemented by the testimony which disclosed that the deceased, at the time of making the will, transacted, intelligently, ordinary business affairs of life. It was therefore established *prima facie* by the proof, and the inferences and presumptions legally arising therefrom, that said George More signed the said will in the presence of the said witnesses; that they signed it as witnesses in the presence of the testator and in the presence of each other as attesting witnesses; that they believed him to be of sound and disposing mind and that he in fact had sufficient mental capacity to execute a will."

In my opinion this will should be admitted to probate.